GIBREAL AUTO SALES, INC., A CORPORATION, DOING BUSINESS AS GIBREAL LEASING CO., APPELLANT, v. MISSOURI VALLEY MACHINERY CO. ET AL., APPELLEES.

186 N. W. 2d 719

Filed April 30, 1971. No. 37710.

Floersch & Floersch, for appellant.

Swarr, May, Royce, Smith, Anderson & Ross, for appellee Missouri Valley Machinery Co.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an appeal from a district court judgment and jury verdict dismissing plaintiff's action in replevin and awarding damages to the defendant, Missouri Valley Machinery Company, by way of a lien for work done and material furnished on a 1967 over-the-road tractor. We reverse the judgment of the district court.

On July 5, 1968, the plaintiff entered into a written agreement with one Ronald Welty, who is now deceased and not a party to this action, whereby Welty agreed to lease a 1967 over-the-road tractor that was owned by the plaintiff. The lease was for 36 months with an option to purchase at the end of the term. It is undisputed that Welty received the tractor in good condition but that during the lease period it became damaged and was taken to the defendant for repairs. It is also undisputed that the plaintiff never expressly authorized the repairs the defendant made to the vehicle, nor did Welty or the defendant attempt to get the plaintiff's consent to the repairs or the work done by the defendant.

Under the lease agreement, Welty was required to furnish full maintenance and to return the tractor to the plaintiff in as good a condition as when he received it, ordinary wear and tear excepted. During the course of the lease Welty became delinquent in his payments and as a result the plaintiff has brought this action of replevin to recover possession of the tractor from the defendant, Missouri Valley Machinery Company, which

is claiming a lien for repairs under section 52-201, R. R. S. 1943. After hearing the evidence the district court dismissed the plaintiff's petition and submitted to the jury only the issue of the value of the defendant's right to possession. The jury found for the defendant in the sum of $4,764.31.

The first question necessary to decide is whether the agreement between the plaintiff and Welty was in fact a lease or, as the plaintiff contends, a sale with a purchase money security interest, that is, what was known prior to the Uniform Commercial Code as a conditional sales contract. We examine the specific provisions of the contract in order to determine the underlying intent of the parties as expressed in the lease agreement. Under the contract, which was expressly termed a lease agreement, Welty was to pay $1,000 a month for 36 months. At the end of that time he could purchase the equipment if he paid the additional and substantial sum of $8,580. Title to the vehicle at all times remained in the plaintiff. At all times the plaintiff had the right to terminate the agreement if the vehicle had either been "converted to uses other than for the purposes and in the territory intended at the time of signing" of the agreement or was being "abused by improper care or driving." In addition, and very significantly, the plaintiff had the right to change motor vehicles of like make and equipment at its discretion. It also appears from the record that both parties at the trial of this case consistently referred to the agreement as a lease and apparently tried it on the theory that it was a lease. It might appear that the question involved here is a close one, but an inspection of section 1-201(37), U.C.C., is the clue to our answer in this case. This section states in part: " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' * * *. Whether a lease is intended as security

is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property *for no additional consideration or for a nominal consideration* does make the lease one intended for security." (Emphasis supplied.)

We have little question as to what the correct solution of this issue is. It is clearly a lease agreement. The amount of consideration at the end of the lease period on the option was substantial. It was not nominal. There was no identification of a property interest in Welty since the plaintiff under the lease agreement could interchange and substitute a new tractor at any time. He was to receive possession and use for a definite period of time, and not indefinitely, and at the end of that period he could become the owner only by paying an amount equal to one-quarter of the total rent already paid. The totality of the circumstances demonstrate that the parties intended the transaction to be that which they said it was, a lease with an option to buy, and not a sale with a purchase money security interest. Therefore, it is clear that the Uniform Commercial Code provisions thereto do not apply. The plaintiff was entitled, as owner, to immediate possession of the vehicle on default of performance of the lease agreement.

The next question presented is whether the defendant, as an artisan, and furnishing the repairs to the vehicle that it did, is entitled to a lien under section 52-201, R. R. S. 1943. This section provides that if an artisan repairs a vehicle, *"at the request of or with the consent of the owner,"* the artisan has a lien on the vehicle to the extent of the work furnished. If his lien is valid, it follows that he has a right to retain the vehicle until the charges are paid, and this replevin action must fail. Welty; of course, could not have recovered the tractor from the defendant artisan, but the problem presented

here is between the plaintiff, the true owner of the property, and the artisan which performed the repair services. There being no specific request by the plaintiff to make the repairs in question nor no notice to the plaintiff of the nature and extent of the repairs, the question becomes whether, under the contract, the plaintiff had impliedly consented to the repairs the defendant made on the vehicle as well as the use of the vehicle as security for the repairs. The trial court accepted this theory, found that the plaintiff had impliedly consented to the repairs, and submitted the issue of the amount of damages to the jury. We do not agree.

The record shows that at all times the plaintiff was the legal owner of the vehicle and there was proper evidence on the vehicle itself by the registration certificate. The certificate of title at all times was in the possession of the plaintiff as the legal owner. It was clear that Welty was not an agent of the plaintiff, nor did he have any express authority to create a lien for repairs of the vehicle. While the contract did require Welty to furnish "full maintenance" and to return the vehicle in as good a condition as it was received, this does not reach the level of "consent" of the owner to subject the vehicle to a lien under section 52-201, R. R. S. 1943. Our research has discovered a case that is almost exactly in point. Bankers' Commercial Security Co., Inc. v. Brennan & Levy, 75 Pa. Super. 199 (1920). In that case the court set out the facts as follows: "This is an action of replevin for an automobile truck, upon which appellant, the intervening defendant, claims a lien by reason of work done by him upon it.

"The plaintiff is the owner of the truck. It was left with the appellant for repairs by Brennan, the defendant in the action, who was in possession under a contract of lease or bailment with the right to purchase on certain terms, which were unperformed and in default at the time the writ issued. *The contract provided that the lessee was to keep the truck in good order and repair*

*and surrender the same at the expiration of the lease, or upon default in performance of any condition or covenant thereof, in as good condition as when received by the lessee, ordinary wear and tear excepted.* While in Brennan's possession the truck was damaged by fire and he delivered it to the appellant to be repaired, without —so far as appears by the affidavit of defense filed by the appellant—the knowledge or authority of the owner. * * * In our opinion this case is governed by the decision in Meyers & Bro. v. Bratespiece, 174 Pa. 119. It is there held: 'Whenever a workman or artisan by his labor or skill increases the value of personal property placed in his possession to be improved he has a lien upon it for his proper charges until paid, but in order to charge a chattel with this lien, the labor for which the lien is claimed must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners.' " (Emphasis supplied.)

Moreover the evidence in this case shows that the defendant made the repairs on the credit of Ronald Welty and not on the security of the tractor. The evidence shows that the repairs were charged to Welty, and not to the plaintiff. The defendant apparently made no attempt to determine the true owner of the vehicle even though it must be presumed that the registration certificate of the tractor was present and plainly visible on the vehicle. The registration certificate was an effective means by which the artisan could easily determine the status of its customer's title. Without further extension of this argument, it appears from the law, authority, and evidence in this case that the plaintiff was at all times the true owner of the vehicle in question and that it at no time gave either express or implied consent to have the repairs made, for which the damages were awarded. We conclude that the defendant did not have an effective artisan's lien against the plaintiff.

Therefore, by way of summary, it appears that the

plaintiff was the true owner of the property and as such owner was entitled to the possession on the default of Welty's lease obligation and that the defendant is in no better legal position than Welty was. It is not necessary in a lease agreement of this nature that there be a specific agreement to recover the vehicle in case of default.

It is true that the plaintiff returned the tractor to Welty after instituting this replevin action. However, that fact is not a relevant consideration for determination of this case since, under our law, facts that transpire after the institution of a replevin action are immaterial in the consideration and determination of the merits of the case. Alliance Loan & Investment Co. v. Morgan, 154 Neb. 745, 49 N. W. 2d 593 (1951).

For the reasons given, the judgment of the trial court is reversed and the cause remanded with directions to enter judgment for the plaintiff for the possession of the vehicle.

REVERSED AND REMANDED WITH DIRECTIONS.