In re NATIONAL WELDING OF MICHIGAN, INC., Debtor.

Bankruptcy No. NL 80–03467.

United States Bankruptcy Court, W. D. Michigan.

Feb. 4, 1982.

---

LEASES ON VEHICLES—SECURED
TRANSACTIONS—PERFECTION

DAVID E. NIMS, Jr., Bankruptcy Judge.

National Welding of Michigan, Inc., has filed a petition under Chapter 11 of Title 11 of the United States Code and is a debtor in possession. A number of leases were entered into by the debtor in possession and Associates Leasing, Inc. Associates has brought this action pursuant to 11 U.S.C. § 365(d)(2) to compel National Welding to assume or reject these leases. The existence and terms of the leases do not appear to be in dispute. The debtor claims, however, that these leases are actually intended as security interests, and that said security interests have not been perfected. Debtor therefore concludes that Associates has no interest in the equipment which is the subject of the leases, and is instead an unsecured creditor.

Michigan Comp.Laws § 440.1201(37) [Mich.Stat.Ann. § 19.1201(37) (Callaghan 1981)] provides:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 2401) is limited in effect to a reservation of a 'security interest'. The term also includes any interest of a buyer of accounts or chattel paper which is subject to article 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under section 2401 is not a 'security interest', but a buyer may also acquire a 'security interest' by complying with article 9. Unless a lease or consignment is intended as security, reservation of title hereunder is not a 'security interest' but a consignment is in any event subject to the provisions on consignment sales (section 2326). Whether a lease is intended as security is to be determined by the facts of each case, however, (a) the inclusion of an option to purchase does not of itself make

Goodman, Miller, Miller & Zameck, Jonathan Miller, Southfield, Mich., for Associates Leasing, Inc.

Jaffe, Snider, Raitt, Garratt & Heuer, Louis P. Rochkind, Detroit, Mich., for debtor.

the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

■ The first agreement concerns a 1977 Ford LNT 9000 valued at approximately $40,000. The lease was dated March 17, 1977, and calls for monthly payments which decline over the term of the lease from $1,210.58 to $229.14. The lease term is 60 months after which the lessee has an option to purchase for $734.99. The definition of security interest quoted above provides that a lease is intended as security where an option to purchase may be exercised for a nominal amount. The courts have developed a number of tests as to the meaning of "nominal" in this context. See Annot., 76 A.L.R.3d 11, 38–54 (1977). In *In re Alpha Creamery Co., Inc.*, 4 U.C.C.Rep. 794 (W.D. Mich.1967), Bankruptcy Judge Benson compared the option price to the list price of the property. In this case an amount of over $40,000 is to be paid over five years. The option price is less than 2% of that amount. Another test noted by Judge Benson is the relationship of the option price to the value of the goods at the time of termination of the lease. In this case we have no indication of the probable value of a five year old tractor, but I would question whether a $40,000 piece of equipment depreciates in value to $734 in five years. I would have to conclude that the option price is nominal, and that this lease was intended as security.

■ The other leases between these parties are of an entirely different variety. The leases contain a formula by which the monthly payments are computed. This formula incorporates the price of the equipment or vehicles delivered and the lessor's cost of money based on the prime rate. The leases are not for a fixed term, nor do they contain an option to purchase. Instead, the leases provide for a final cost adjustment whenever the lease is terminated. The property is returned to the lessor who arranges for its sale. Based on the number of months the lease has been in effect, a final adjustment figure is assigned to the vehicle, an amount for which the lessee is responsible. Any deficiency of the sale price to meet this figure must be made up by the lessee; any surplus of the sale price over this amount is returned to the lessee.

There are a number of cases in which courts have been faced with these so-called open-ended leases. All that I have been able to locate have concluded that leases of this variety are intended as security. *In re Tillery*, 571 F.2d 1361 (5th Cir. 1978); *In re Tulsa Port Warehouse Company, Inc.*, 4 B.R. 801 (N.D.Okl.1980); *In re Brothers Coach Corp.*, 9 U.C.C.Rep. 502 (E.D.N.Y. 1971); *In re Teel*, 9 B.R. 85 (Bkrtcy.N.D. Tex.1981); *In re Gehrke Enterprises, Inc.*, 28 U.C.C.Rep. 794 (Bkrtcy.W.D.Wis.1979); *Pierce v. Leasing International, Inc.*, 22 U.C.C.Rep. 269 (Ga.1977). The reasoning in those opinions appears to be sound. The ultimate effect of this type of lease is that the lessee, rather than having an *option* to purchase, is *required* to pay an amount at the close of the lease equal to the value of the property at the outset reduced by a substantial portion of the monthly payments. *Pierce, supra.* Although the lessee is not required to purchase the equipment personally, it is responsible for paying the purchase price, after taking credit for whatever amount can be recovered from a third party purchaser.

"It is the lessee who has the real interest in the disposition of the vehicle. Lessor is assured by the agreement of the lessee that he will receive the original agreed value of the vehicle—no more and no less—plus an amount that is apparently interest. In the case of premature termination, the lessor is still assured that he will receive the original value of the vehicle plus interest, except that the interest is reduced by the 'Rule of 78's.'

\*     \*     \*     \*     \*     \*

It is true that the lessee probably will not pay the full purchase price himself

because the termination value will probably be paid by a third party purchaser. However, it is lessee who will pay any deficiency or receive any surplus. The practical effect of this arrangement is the same as if lessee purchased the car, then sold it two or three years later and used the proceeds to pay off the note." *In re Tulsa Port Warehouse, supra,* at 805.

Furthermore, if the sale brings in an amount in excess of the final adjustment figure, the excess is returned to the lessee. This would indicate that the parties recognized that the lessee could acquire an equity in the property.

"Though the agreement fails to provide for the transfer of title to the 'Lessee', the Lessee has the only interest in the equity. The agreement provides that if the net sale proceeds after the expiration or termination of the 'lease' exceed the depreciation value which, if paid in accordance with the terms of the agreement, is zero, then such excess is payable to the 'Lessee'. On the other hand, if before full payment is made the 'Lessor' conducts a sale and the net sale proceeds are less than the depreciated value, then the 'Lessee' is obligated to pay the difference to the 'Lessor'. Though the ultimate determination is not based on title or the transfer of title the agreement clearly invests the 'Lessee' with the rights and obligations of ownership subject only to the lien of the 'Lessor' to the extent of the payments due as depreciated value as that term is described in the agreement." *Brothers Coach, supra,* at 504.

"The termination formula recognizes the equity of the 'Lessee', in the vehicle because he is required to bear the loss or receive the gain from its wholesale disposition. In addition, his equity extends to the retail value of the vehicle which, in effect, he is required to pay under the contract." *Tillery, supra,* at 1365.

Furthermore, these lessors have given up all rights in the property save a right to the purchase price over time. They cannot retake possession and use the property on termination or default, having given up any rights in the surplus value by the terms of the lease. *Tulsa, supra.*

I would conclude that the second two leases are likewise intended as security.

In 19 Wayne Law Rev. 593—"Secured Transactions" (1973), Professor James A. Martin has an interesting comment on these types of leases at pp. 611–612:

"*Uniroyal* (and *John Deere Co. v. Wonderland Realty Corp.,* another case from the Survey period in which the 'lease' was even more obviously intended as a security agreement than the *Uniroyal* lease) makes it clear that Michigan Courts were not at all inclined to accept as 'leases' those agreements which are designed to accomplish the purposes of a security agreement It is a bit mystifying that drafters continue to churn out such sham leases—apparently even fooling themselves into believing they need not file— especially since unrelated benefits of the lease characterization, such as tax benefits, have largely disappeared."

Having concluded that these leases were intended as security, the Court must next address the question of perfection.

"Compliance * * with Section 217 or 238 of Act No. 300 of the Public Acts of 1949, as amended, * * is equivalent to the filing of a financing statement under this article, and a security interest in property subject to the statute * * can be perfected only by compliance therewith. * * * " Mich.Comp. Laws § 440.9302 [Mich.Stat. Ann. § 19.9302 (Callaghan 1981) ].

Section 217 of Act No. 300 of the Public Acts of 1949, as amended, provides in part:

"An owner of a vehicle subject to registration under this act shall make application to the Secretary of State for the registration of the vehicle and issuance of a certificate of title for the vehicle * * The application shall contain all of the following:

" * *

"(c) A statement of the applicant's title and the names and addresses of the holders of security interests in the vehi-

cle * * " Mich.Comp.Laws § 257.217 [Mich.Stat.Ann. § 9.1917 (Callaghan 1981)].

Section 238 of Act No. 300 of the Public Acts of 1949 provides the procedure for noting security interests after a certificate has been issued to the owner.

Act No. 300, supra, defines owner:

" 'Owner' means: (a) Any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days.

"(b) A person who holds the legal title of a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner." Mich.Comp. Laws § 257.37 [Mich.Stat.Ann. § 9.1837 (Callaghan 1981)].

As the parties agree there were no questions of fact, the Court must look to the pleadings to determine whether there was perfection. In its counterclaim, National Welding alleges that Associates Leasing, Inc., does not appear as a secured party on the certificates of title for the various vehicles. No denial was made to this allegation. Associates argues, however, that the lessor in a lease intended as security is perfected when a certificate of title shows it as the owner rather than the secured party. I would have to reject that argument. Under the Michigan statutes quoted above, even if this transaction were a true lease, the lessee should have been listed on the certificate of title as the owner. There has been no attempt by Associates to comply with the Michigan statute governing perfection and this Court would therefore find that perfection has not occurred.

Thus, there being no perfection, the security interest of Associates is invalid as to a trustee in bankruptcy. Mich.Comp.Laws Sec. 440.9301(3) [Mich.Stat.Ann. Sec. 19.-9301(3) (Callaghan 1981)]. Since the debtor in possession has the powers of a trustee, 11 U.S.C. Section 1107(a), the security interest of Associates will be subordinated to the rights of National Welding as a debtor in possession. See *In re Paige*, 28 U.C.C.Rep. 559, 3 B.R. 115 (Bkrtcy.W.D.Mich.1980); *In re Deb Cabinet Co., Inc.*, 16 U.C.C.Rep. 236 (E.D.Tenn.1974).