OPINION OF THE COURT
Edward H. Lehner, J.
The issue in this case is whether a lessor’s disclaimer of all warranties in an automobile lease is enforceable where a vehicle to be used for business purposes failed to operate properly within a short period after delivery.
This action is against the corporate lessee and the individual grantors (officers of the corporate defendant) for breach of an automobile lease, seeking to recover the accelerated unpaid rental for the remainder of the lease term plus attorneys’ fees. Defendants’ answer sets forth a general denial and a counterclaim for loss of business resulting from an inability to attend certain business meetings due to the defective nature of the vehicle. Before the court is plaintiff’s motion for summary judgment.
*69 On September 27, 1982, defendant PSI Cosmetics, Inc., entered into an automobile lease agreement with plaintiff for the rental of a 1982 Renault. Defendants assert in their papers that: on November 28, 1982 the engine began to smoke and the car was towed to a nearby authorized Renault dealership where it took over three months to repair what was said to be a burned out motor; during this period defendants continued to make all rental payments despite being deprived of the use of the vehicle; upon picking up the vehicle from the repair shop Mr. Columbia was informed that after driving the vehicle an additional 300 to 600 miles, he should have it retorqued; three days after this work was done the engine again began to burn, and the automobile was rendered inoperative and towed to plaintiff’s lot. As a result of this experience Columbia allegedly missed an important business meeting, resulting in the cancellation of a $40,000 contract, thereby providing the basis for the counterclaim.
The agreement, printed on plaintiff’s standardized form without any typed or handwritten riders, contains myriad procedural safeguards by which the lessor seeks to insulate itself. The lease provides that the lessor retains title and a security interest in the vehicle. There is no option to purchase granted to the lessee, who waives “counterclaim, set off, reduction, abatement, deferment or any other kind of defense because of * * * unsatisfactory performance of the vehicle or for any reason whatever”. Repairs and replacement of parts are made the responsibility of the lessee. Further insulation is provided for the lessor by a disclaimer of any warranties, except for the manufacturer’s standard warranty. The implied warranties of merchantability and of fitness for a particular use are conspicuously disclaimed (Uniform Commercial Code, § 2-316, subd [2]; § 1-201, subd [10]).
Although not raised in their answer, defendants contend in their papers that both the warranty disclaimer and the waiver of counterclaims are unconscionable and that, as to the action for the unpaid balance, plaintiff has failed to mitigate its damages in that it failed to sell the automobile.
*70 Although the Legislature has sought to protect individual purchasers of motor vehicles, it has clearly chosen not to protect corporate lessees of personal property. For example, New York’s celebrated new “Lemon Law” (General Business Law, § 198-a) is inapplicable to the case at bar as it requires a “purchaser” and contemplates a sale. It is not concerned with the problem of “lemon” leases. Intended to protect only the abused “consumer” whose purchase is for “personal, family or household purposes”, its coverage apparently extends neither to corporate entities, regardless of size, nor to transactions effected for business purposes. Finally, its application is restricted to manufacturer’s express warranties, thus being of no avail to a defendant faced with implied warranty disclaimers and a nonmanufacturer. (See Memorandum of Legislative Representative of City of NY, 1983 McKinney’s Session Laws of NY, p 2554; Mindell, Summary of New State Laws to Aid Consumer Protection, NYLJ, Aug. 16,1983, p 1, col 3 [suggesting amendment to include implied warranties].)
At the Federal level, the Magnuson-Moss Warranty Act (US Code, tit 15, § 2301 et seq.) prohibits disclaimers of implied warranties, section 2308 (subd [a]) of title 15 of the United States Code, but only in connection with a “sale” (US Code, tit 15, § 2301, subd [7]) to a “buyer” (US Code, tit 15, § 2301, subd [3]) of a “consumer product”, which is defined as one “normally used for personal, family or household purposes” (US Code, tit 15, § 2301, subd [l]).[1]
Similar limitations are inherent in the credit disclosure statutes such as the Motor Vehicle Retail Installment Sales Act (Personal Property Law, § 301, subd 4) requiring a “sale, other than for a commercial or business use”, and the Federal Truth in Lending Act (US Code, tit 15, § 1601, *71 subd [b]; § 1602, subd [h]; 12 CFR 226.2 [p], [t]), contemplating credit extended to “a natural person” where the subject of the transaction is “primarily for personal, family or household purposes.”
The Motor Vehicle Retail Installment Sales Act applies also to lease agreements in which the lessee agrees to pay “a sum substantially equivalent to or in excess of” the value of the motor vehicle and becomes or has the option to become the owner upon full compliance with the terms of the contract. (Personal Property Law, § 301, subd 5). The Truth in Lending Act goes further, protecting lessees of consumer goods, even in the absence of an option to purchase. (US Code, tit 15, § 1667, subd [1]; 12 CFR 226.2 [mm].)
None of these statutes, however, provide comfort to the defendants herein, whose transaction has taken the form of a pure business lease of personal property.
The first issue that must be decided is whether article 2 of the Uniform Commercial Code and the implied warranties which it provides apply to the automobile lease herein. If so, what remains to be resolved is whether the warranty disclaimer is unconscionable.
Several cases in this jurisdiction have applied article 2 of the Uniform Commercial Code to the leasing of chattels (e.g., Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, 58 AD2d 482; Laudisio v Amoco Oil Co., 108 Misc 2d 245; Hertz Commercial Leasing Corp. v Transportation Credit Clearing House, 59 Misc 2d 226, revd on other grounds 64 Misc 2d 910; United States Leasing Corp. v Franklin Plaza Apts., 65 Misc 2d 1082).
Judicial approaches to the applicability of article 2 to leases has been “placed along a spectrum measuring willingness to depart from the sale construct.” (Note, Disengaging Sales Law from the Sale Construct: A Proposal to Extend the Scope of Article 2 of the UCC, 96 Harv L Rev 470, 475.)
The “exclusionary” view requires strict adherence to the premise that article 2 applies only to paradigmatic sales, thereby excluding lease transactions as well as hybrid sales-plus-services contracts from coverage.
*72 The “analogy” approach advocates that article 2 be applied to transactions held not to be paradigmatic sales, but only when the transactions closely resemble such sales. (Murray, Under the Spreading Analogy of Article 2 of the Uniform Commercial Code, 39 Ford L Rev 447, 451.) This has been the approach of the courts in this State. (See Uniflex, Inc. v Olivetti Corp., 86 AD2d 538 [leases]; Aguiar v Harper & Row Publishers, 114 Misc 2d 828, 832 [sales-plus-services].) Thus, article 2 is said to be “attended by a penumbra or umbrella of influence in areas of contract law not specifically within the literal definition of sales under section 2-102” (Lupiano, J., dissenting in Leasco Data Processing Equip. Corp. v Starline Overseas Corp., 74 Misc 2d 898, 903, affd 45 AD2d 992, mot for lv to app dsmd 35 NY2d 963; see, also, Restatement, Contracts 2d, § 208, Comment a).
Related to the analogy approach is the “policy” approach which further departs from a rigid adherence to the sales model by the selective application of particular provisions of article 2 whenever the policies underlying such provisions are appropriate to the transaction in issue. (Note, The Uniform Commercial Code as a Premise for Judicial Reasoning, 65 Col L Rev 880; see, e.g., Dillman & Assoc. v Capitol Leasing Co., 110 111 App 3d 335; Heller & Co. v Convalescent Home of First Church of Deliverance, 49 Ill App 3d 213.)
The most inclusive approach is a more complete departure from the sales construct, focusing on the article 2 scope provision in section 2-102 of the Uniform Commercial Code (“transactions in goods”). Although the article is replete with terms such as “sale”, “seller”, and “buyer” (see Lousin, Leases, Sales and the Scope of Article Two of the U.C.C. in Illinois, 67 111 Bar J 468, 470, n 20), such language is nowhere to be found in section 2-102. An argument for such approach, as applied to lease transactions, is that it recognizes the modern economic realities of less-than-full-title property interests, rejecting the use of location of title as a basis for resolving issues. In eschewing the prevailing analysis of the analogy approach, it is said to avoid ad hoc determinations and the intellectually questionable pigeonholing of facts so that the transaction will *73 more closely resemble a sale. (Note, 96 Harv L Rev 470; Murray, op. cit.) Thus, unlike the analogy approach, it does not perpetuate the use of the “covert tools” in decision-making which the draftspersons of the Uniform Commercial Code had hoped to avoid. (See Uniform Commercial Code, § 2-302, Official Comment 1; Llewelyn, The Common Law Tradition, p 365; Ackerman, Reconstructing American Law, p 22.)
Though eloquently advocated (Note, 96 Harv L Rev 470; Murray, op. cit.) the inclusive approach has not been accepted. While it has been noted that “transactions in goods” encompasses a far wider area of activity than a “sale” (e.g., Hertz Commercial Leasing Corp. v Transportation Credit Clearing House, 59 Misc 2d 226, 230, supra), this has been more in the way of judicial lip service. The cases in New York have not specifically relied on the language of the article d scope provision alone, most preferring instead to analyze the underlying facts of the transaction in issue in order to determine whether it sufficiently approximates a sale. (See What Constitutes a Transaction, a Contract for Sale, or a Sale Within the Scope of UCC Article 2, Ann., 4 ALR4th 85, 109-118.)
Therefore, much as this court might prefer to indulge in the flexible and inclusive approach in determining whether the lease transaction herein is subject to the provisions of article 2, the inquiry will be limited to an analysis of the transaction in order to determine whether or not it is analogous to a sale.
The agreement provides for rental payments over a four-year period totaling $9,153.12. No information has been submitted as to the fair market value of the car at the time that the lease was entered into, nor as to what portion of the price represents finance charges. The lessee is responsible for insurance coverage, repairs and replacement of parts; it bears the risk of damage or loss of the vehicle; and it agrees to indemnify the lessor for any claims. Lessor retains title to the vehicle and a security interest. The agreement is denominated “an agreement of lease only.” Finally, there is no option to purchase although the agreement states that such option may be provided by a purchase rider.
*74 In determining the answer to the similar problem of whether a lease of personal property is intended to be a security interest the Uniform Commercial Code has adopted a simple test: “Whether a lease is intended as security is to be determined by the facts of each case; however * * * an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.” (Uniform Commercial Code, § 1-201, subd [37].) The absence of a purchase option does not foreclose the inquiry as to whether a particular transaction is a lease or a security interest; the court merely goes on to consider any other relevant factors in order to make its determination.
The same reasoning applies in determining whether a particular lease transaction is governed by article 2. Thus, in Uniflex, Inc. v Olivetti Corp. (86 AD2d 538, supra), where there was no option to purchase, no provision for a renewal term at a nominal rental, and lessee was required to return the equipment at the end of the initial term, the First Department held that an issue of fact existed as to the nature of the lease since the price for the rental was far in excess of the cost of the equipment. Defendant’s affirmative defense based on the four-year Statute of Limitations for the sale of goods (Uniform Commercial Code, § 2-725) rather than the six-year period for contracts (CPLR 213, subd 2) was therefore reinstated.
Although the court lacks information as to the value of the car, the relationship of consideration to actual value, while an important factor, is not the only one. While the lessor retains title and a security interest, the fact that the lessee is saddled with both the risks and headaches of ownership suggests that there is no significant economic difference between full title ownership and the instant lease. Therefore, the court concludes that the transaction at bar is governed by the provisions of article 2 of the Uniform Commercial Code, and that the lease is subject to the implied warranties of merchantability and of fitness for a particular purpose (Uniform Commercial Code, §§ 2-314, 2-315) unless they have been effectively disclaimed.
*75 The form of the disclaimer of warranties herein complies with the requirements of subdivision (2) of section 2-316 of the Uniform Commercial Code. The question remains as to whether or not such disclaimer is unconscionable, since it is nonetheless subject to judicial scrutiny under section 2-302. (Industralease Automated Scientific Equip. Corp. v R.M.E. Enterprises, 58 AD2d 482, 487, supra; Sarfati v Hittner & Sons, 35 AD2d 1004; Laudisio v Amoco Oil Co., 108 Misc 2d 245, 249, supra; Architectural Aluminum Corp. v Macarr, Inc., 70 Misc 2d 495; Jefferson Credit Corp. v Marcano, 60 Misc 2d 138,140; Walsh v Ford Motor Co., 59 Misc 2d 241 [ambiguous provision, seemingly both a warranty disclaimer under subdivision (2) of section 2-316 and also an exclusion of damages for personal injuries, which is prima facie unconscionable under subdivision (3) of section 2-719]; Farnsworth, Contracts, p 319; contra Leff, Unconscionability and the Code-The Emperor’s New Clause, 115 U of Pa L Rev 485, 523; see White & Summers, Uniform Commercial Code [2d ed], pp 475-481.)
Even if this court were to hold that article 2 of the Uniform Commercial Code does not apply to the transaction herein, the validity of the warranty disclaimer would be still in issue since the common law of this jurisdiction has recognized both the implied warranties of quality (Laudisio v Amoco Oil Co., supra, p 248), and the doctrine of unconscionability (Matter of Friedman, 64 AD2d 70, 84; Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, supra, p 488; Triple D & E v Van Buren, 72 Misc 2d 569, 577, affd sub nom. D & E Ind. Catering v Antinozzi, 42 AD2d 840; Tai On Luck Corp. v Cirota, 35 AD2d 380, app dsmd 29 NY2d 747; cf. Farnsworth, op. cit., § 4.27).
“As a general proposition, unconscionability * * * requires some showing of £an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party’ ” (Matter of State of New York v Avco Fin. Serv. of N. Y., 50 NY2d 383, 389, quoting from Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449). The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the sub-
*76 stantive element looks to the content of the contract, per se (Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, supra, p 489, n 4; State of New York v Wolowitz, 96 AD2d 47, 67). In determining the conscionability of a contract, no set weight is to be given to any one factor; each case must be decided on its own facts. (Matter of Friedman, supra, p 85.) “However, in general, it can be said that procedural and substantive unconscionability operate on a ‘sliding scale’; the more questionable the meaningfulness of choice, the less imbalance in a contract’s term should be tolerated and vice versa * * * While there may be extreme cases where a contractual term is so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process * * * such cases are the exception.” (State of New York v Wolowitz, supra, p 68;[2] see, also, Fried, Contract as Promise, p 104, n.) Thus, in most cases there must be a showing of both a lack of meaningful choice and the presence of contractual terms which unreasonably favor one party. (Matter of State of New York v Avco Fin. Serv. of N. Y., supra, p 389.)
The defense of unconscionability is an affirmative one (CPLR 3018, subd [b]; see Rzepko v GIA Gem Trade Lab., 115 Misc 2d 755). Although defendant has failed to plead it, in light of the circumstances, the court deems the answer amended pursuant to CPLR 3025 (subd [b]). (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3018:22, p 154; C3212:10, p 431.)
The lease agreement under discussion was entered into by commercial entities. While “courts have not been solicitous of businessmen in the name of unconscionability” (White & Summers, op. cit., p 170), and will generally not *77 invalidate an agreement in the name of unconscionability in commercial settings (op. cit., p 172), it is nonetheless apparent that small businessmen can also be victimized by unconscionable practices. However, although some courts have refused to enforce certain clauses in commercial contexts even in the absence of procedural unconscionability (Fairfield Lease Corp. v Marsi Dress Corp., 60 Misc 2d 363), such cases are rare. (See State of New York v Wolowitz, supra, p 68.)
While defendants’ affidavit details the allegedly onerous nature of the agreement, or its substantive unconscionability, there are no factual allegations to inform the court of the procedural aspect of that defense, such as whether there was a gross inequality of bargaining power, whether high pressure or deceptive practices were utilized and the like. On the other side of the coin, plaintiff, perhaps feeling no need to reply with respect to the unpleaded affirmative defense, has not attempted to rebut the evidence of substantive unconscionability by showing that the contractual clauses in issue have a legitimate commercial purpose. (See Epstein, Unconscionability: A Critical Reappraisal, 18 J Int L & Econ 293.)
Since it cannot be determined whether or not this agreement is enforceable without affording both sides the “opportunity to present evidence as to its commercial setting, purpose and effect” (Uniform Commercial Code, § 2-302, subd 2), plaintiff’s motion for summary judgment on the issue of liability under the agreement is denied.
Section 2-302 of the Uniform Commercial Code gives the court the power to refuse to enforce an unconscionable agreement. It does not, however, provide damages to a party who enters into such agreement (Pearson v National Budgeting Systems, 31 AD2d 792; Vom Lehn v Astor Art Galleries, 86 Misc 2d 1,11.) Accordingly, defendants’ counterclaim for damages is dismissed.

. Since “the use to which a product is put by an individual buyer is not determinative” and “products such as automobiles * * * which are used for both personal and commercial purposes come within the definition of consumer product” (16 CFR 700.1 la]; Business Modeling Techniques v General Motors Corp., 123 Misc 2d 605; Crume v Ford Motor Co., 60 Ore App 224; Patron Aviation v Teledyne Inds., 154 Ga App 13; Saxe and Blejwas, The Federal Warranty Act: Progress and Pitfalls, 22 NY L Sch L Rev 1, 4-5; contra Balser v Cessna Aircraft Co., 512 F Supp 1217; cf. Walsh v Ford Motor Credit Co., 113 Misc 2d 546 [ostensibly applying objective test of the CFR, yet proceeding to discuss intentions of the parties as to actual future use of the product)). The automobile lease herein, though executed by a corporate lessee for a business purpose, may nonetheless be a lease of a “consumer product”. Regardless of such determination, coverage under the statute is lacking since no “sale” occurred.

. See, however, Long Is. Opthalmologic Assoc. v West Broadway Professional Bldg. (88 AD2d 585) which holds that section 235-c of the Real Property Law concerns itself only with procedural unconscionability. The statute makes no reference to the distinction between substantive and procedural unconscionability, and is identical, except for its references to real property leases, to section 2-302 of the Uniform Commercial Code. Since the Real Property Law was intended to codify the protection afforded tenants by several cases analogizing to the Uniform Commercial Code (see Governor’s Memorandum, NY Legis Ann, 1976, p 406), it seems unlikely that section 235-c of the Real Property Law was intended to operate less broadly than its statutory model. (See Meehan, Comments, McKinney’s Forms, Real Property Practice [1984 Supp], § 6:12 [questioning the decision is Long Is. Opthalmologic Assoc. v West Broadway Professional Bldg., 88 AD2d 585, supra].)