(743 P.2d 1012)

No. 60,439

FORD MOTOR CREDIT CO., INC., *Plaintiff*, v. STEVE A. SIMS, *Defendant/Third-Party Plaintiff/Appellant*, v. SCHOLFIELD BROTHERS, INC., *Third-Party Defendant/Appellee*.

Petition for review denied December 22, 1987.

Opinion filed October 8, 1987.

*Jon S. Womack*, of Wichita, for the appellant.

*Broc E. Whitehead*, of Williamson, McGee, Griggs & DeMoss, Chartered, of Wichita, for the appellee.

Before BRISCOE, P.J., HARRY G. MILLER, District Judge Retired, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

MILLER, J.: Steve Sims, the appellant, appeals from an order dismissing his third-party complaint against Scholfield Brothers, Inc., third-party defendant, in which Sims alleged that Scholfield, a car dealer, had violated the Kansas Lemon Law, K.S.A. 1986 Supp. 50-645(c).

The facts are not in dispute. In April 1985, Sims entered into a lease agreement with Scholfield for a new car. Under the terms of the lease, Sims was required to make payments of $256.32 per month for 48 months, and to pay the cost of all insurance, taxes, and license fees on the car. At the end of the 48 months, the lease would expire and Sims would have the option of returning the car or purchasing the car for its fair market value of $5,004.72. In accordance with the terms of the agreement, after it was executed it was assigned to Ford Motor Credit Co., Inc., the plaintiff herein.

Sims drove the car for some three months and made his payments to Ford Motor as required. The car did not perform to Sims' satisfaction, however, and he returned it to Scholfield for repairs on several occasions. When the problems were not solved to his satisfaction, Sims abandoned the car at the offices of Ford Motor. Ford Motor treated the abandonment as a voluntary repossession and resold the car.

Ford Motor then filed this suit against Sims for the deficiency owed by him under the lease agreement. In defense of the action, Sims filed a third-party petition against Scholfield, claiming that Scholfield was liable to him for return of the "purchase price" of the car and for "collateral damages" under the provisions of the Kansas Lemon Law. The district court granted Scholfield's motion to dismiss the third-party complaint for failure to state a claim on which relief could be granted. It is from this dismissal that Sims has appealed.

Sims contends the Kansas Lemon Law should be construed liberally in harmony with the U.C.C. as a part of the State's consumer protection laws. When construed in that manner, he argues, his lease agreement was a consumer transaction covered by the act and, as such, the legislature intended the Lemon Law to afford protection against "the manufacturer, its agents or its *authorized dealer.*" Scholfield contends the liability section of the Lemon Law affords relief only against the manufacturer of the vehicle and that Sims was not a "consumer" within the meaning of the statute. The issues are of first impression in this state.

K.S.A. 1986 Supp. 50-645 provides:

"(a) As used in this act:

"(1) 'Consumer' means the original purchaser, other than for purposes of resale, of a motor vehicle; and

"(2) 'motor vehicle' means a new motor vehicle which is sold in this state, and which is registered for a gross weight of 12,000 pounds or less, and does not include the customized parts of motor vehicles which have been added or modified by second stage manufacturers, first stage converters or second stage converters as defined in K.S.A. 8-2401 and amendments thereto.

"(b) If a motor vehicle does not conform to all applicable warranties, and the consumer reports the nonconformity to the manufacturer, its agent or its authorized dealer during the term of any warranties or during the period of one year following the date of original delivery of the motor vehicle to a consumer,

whichever is the earlier date, the manufacturer, its agent or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such warranties, notwithstanding the fact that such repairs are made after the expiration of any such term or such one-year period.

"(c) If the manufacturer, or its agents or authorized dealers, are unable to conform the motor vehicle to any applicable warranty after a reasonable number of attempts, *the manufacturer* shall replace the motor vehicle with a comparable motor vehicle under warranty or accept return of the vehicle from the consumer and refund to the consumer the full purchase price including all collateral charges . . . ." Emphasis added.

The interpretation of a statute presents a question of law and it is the function of the court to interpret the statute in order to give it the effect intended by the legislature. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984). Where the language of the statute is plain and unambiguous, however, courts must give effect to the intention of the legislature as *expressed* rather than determine what the law should or should not be. *Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293, 1297 (10th Cir. 1986); 73 Am. Jur. 2d, Statutes § 194.

The language of the Lemon Law is plain and unambiguous. Despite the use of the terms "manufacturer, its agent or its authorized dealer," the statute clearly imposes *liability* only on the manufacturer of a nonconforming vehicle. When a motor vehicle cannot be made to conform to the applicable warranties, the statute obligates the manufacturer to replace the vehicle with a comparable vehicle under warranty or to accept return of the vehicle in exchange for a refund of the full purchase price. The statute does not impose any liability upon an authorized dealer, such as Scholfield. We therefore conclude that the Lemon Law was intended to provide a remedy against the manufacturer of the vehicle only and that it does not create a new consumer action against a dealer.

Scholfield further contends that, in any event, the Kansas Lemon Law does not apply to a lease transaction such as is involved here.

The statute defines "consumer" as an "original purchaser" and "motor vehicle" as a "new motor vehicle which is *sold* in this state." Thus, under the plain language of the statute, it does not apply to a true lease transaction. Sims suggests, however, with-

out alleging any factual basis for his conclusion, that the so-called lease agreement here may have been a "disguised sale," and he maintains that whether or not the lease was a true lease or was intended as a security instrument taken to finance a sale presents an issue of fact which the court cannot dismiss without an evidentiary hearing. In determining the issue, he urges the same rules should be applied as in U.C.C. cases.

The question then becomes whether the option to purchase in the lease agreement here transforms the lease into a sale. In determining the answer to similar problems, the U.C.C. has adopted the following test:

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." K.S.A. 1986 Supp. 84-1-201(37).

See *Executive Financial Services, Inc. v. Pagel*, 238 Kan. 809, 715 P.2d 381 (1986); *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975).

The general rule is, when no substantial question of fact remains, "the interpretation and construction of a contract becomes a question of law for the court to determine. [Citation omitted.] That being so, the construction of the terms and the effect of a written instrument can be determined as a matter of law." *Intercontinental Leasing, Inc., v. Lehr*, 209 Kan. 132, 137, 495 P.2d 900 (1972).

The U.C.C. test provides no help to Sims in resolving the issue here. There is nothing in the case that indicates that either Ford Motor or Scholfield was financing Sims' purchase of the car with a lease agreement. Although he had the option to purchase the car at the end of the lease term, he would have had to buy the car for its then agreed fair market value. He would not have acquired ownership for a nominal sum. The lease agreement designates Sims as the lessee and Scholfield as the lessor, and the facts indicate the transaction was a true lease and not a disguised sale.

The Lemon Law requires a "purchaser" and contemplates a sale. It is not concerned with the problems of "lemon leases."

See *Barco Auto Leasing Corp. v. PSI Cosmetics*, 125 Misc. 2d 68, 478 N.Y.S.2d 505 (1984).

Since the Kansas Lemon Law does not apply to true lease transactions and does not provide a remedy against new car dealers, the trial court did not err in dismissing Sims' third-party action.

Affirmed.