**In re Leola WINSTON, Debtor.**

**Bankruptcy No. 94–04785–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Jan. 18, 1995.

Cheryl Daugherty, Birmingham, AL, for debtor.

James Greer, Birmingham, AL, for movant.

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND DENYING CONFIRMATION

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court for trial on the Motion for Relief From Automatic Stay filed by Chrysler Leaserve, Inc. Appearing were Ms. Cheryl A. Daugherty, the attorney for the Debtor, Mr. James Greer, the attorney for Chrysler Leaserve, Inc., Mr. Charles King, the Assistant Standing Chapter 13 Trustee, and the Debtor, Ms. Leola

Winston. The matter was submitted upon the record in the case, the stipulations between the parties, and the arguments, assertions and briefs of counsel, who advised the Court that no testimony would be offered. Chrysler has also objected to the confirmation of the Debtor's Chapter 13 plan.

## FINDINGS OF FACT

On August 8, 1990, the Debtor and Chrysler Leaserve, Inc. entered into an agreement entitled "Gold Key Lease Agreement."[1] Under the terms of the agreement, the Debtor leased a 1990 Chrysler Imperial automobile from Chrysler for use by the Debtor for a period of 48 months. In return for the use of the automobile, the Debtor agreed to pay Chrysler $545.36 a month for each month of the lease term.

Upon expiration of the lease term, the Debtor was required by the agreement to return the automobile to Chrysler. The agreement, however, provided the Debtor with the option to purchase the vehicle at the end of the lease term for $8,391.30, provided the Debtor was not then in default under the agreement and the Debtor notified Chrysler of her intention to purchase the vehicle 30 days prior to the end of the lease.

The lease term expired on August 10, 1994. On August 15, 1994, the Debtor filed her Chapter 13 petition. The Debtor contends that the agreement between her and Chrysler is not a true lease, but is a security agreement, and proposes to pay Chrysler's "secured claim" of $8,391.30 over a period of five years as part of her Chapter 13 plan. Chrysler, however, contends, that the agreement is a true lease with an option to purchase, and that the Debtor may only exercise the option to purchase the automobile according to the terms of the lease, by immediately paying $8,391.30 to Chrysler.

## CONCLUSIONS OF LAW

■ The agreement between the Debtor and Chrysler is styled "lease agreement," is referred to throughout the document as a "lease," and specifically provides in Paragraph F of the same that "I [the Debtor] agree that the agreement is one of lease and not of sale and I have no equity or ownership rights in the vehicle...."[2] While the fact that the instrument contains language which defines the instrument as a lease is helpful in determining the nature of the agreement between the parties, it is not conclusive. A determination of whether the agreement constitutes a true lease or a security agreement requires consideration of the several factors enumerated in Ala.Code 1975, § 7–1–201(37)(b), which provides that, if the lessee cannot unilaterally terminate her obligation to pay under a contract before the end of the lease term, then the contract is a security interest, rather than a true lease, if either (a) the original term of the lease is equal to or greater than the remaining economic life of the leased goods; or (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods; or (c) the lessee has the option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or (d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

■ Under the terms of the contract between the Debtor and Chrysler, the Debtor is obligated to pay each month until the end of the term of the contract, and cannot unilaterally quit paying before that time. The automobile which is the subject of the contract obviously has a economic life which is greater than four years. The contract does not require the Debtor to renew the contract for the remaining economic life of the automobile. Neither does the contract require the Debtor to become the owner of the automobile, but does give the Debtor the option to become the owner. To exercise the option, however, the Debtor must pay Chrysler $8,391.30. The issue then is whether or not

---

1. The original lessor under the agreement was Richard Kelley Chrysler–Plymouth. The lease was subsequently assigned to the Movant.

2. Chrysler is named as the "owner" of the vehicle on the certificate of title.

the amount that the Debtor is required to pay under the contract in order to exercise the option to purchase constitutes "nominal consideration."

 "Nominal" means "being so small, slight, or negligible as scarcely to be entitled to the name: trifling, insignificant." Webster's Third New International Dictionary of the English Language Unabridged (1966), page 1534. "Hence a *nominal payment* is a token payment, bearing no relation to the real value of what is being paid for." The American Heritage Dictionary, Second College Edition (1985), page 845. "Nominal consideration" is "[o]ne bearing no relation to the real value of the contract or article...." Black's Law Dictionary (6th ed. 1990), page 307. "The courts, in referring to the term 'nominal,' frequently use it interchangeably with the sum of one dollar or some other piddling amount; but the real yardstick in determining whether the option price is nominal or substantial would appear to hinge on whether that price bears a resemblance to the fair market price of the article." *In re Universal Medical Services, Inc.,* 8 U.C.C.Rep.Serv. 614, 1970 WL 12640 (Bankr. E.D.Pa.1970).

For example, a purchase option price of $1 on a lease of a 1969 Mercedes 280SE automobile, for four years, with monthly rental of $291 is nominal consideration. *BJL Leasing Corp. v. Whittington, Singer, Davis and Co.,* 204 N.J.Super. 314, 498 A.2d 1262, 1264 (Ct. App.1985). *See also, Jefferds v. Ellis,* 127 Misc.2d 477, 486 N.Y.S.2d 649, 652 (N.Y.Sup. Ct.1985) (purchase option price of $6 on lease of truck-tractor for 15 months, with monthly rental of $460 is nominal consideration), *rev'd on other grounds,* 122 A.D.2d 595, 505 N.Y.S.2d 15 (1986) and 132 A.D.2d 321, 522 N.Y.S.2d 398 (1987); *Tom Benson Chevway Rental & Leasing, Inc. v. Allen,* 571 S.W.2d 346, 348 (Tex.Ct.App.1978) (purchase option price of $1 on lease of automobile for 36 months, with monthly rental of $150 is nominal consideration); *James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis,* 292 Minn. 277, 194 N.W.2d 775, 780 (1972) (purchase option price of $1 on lease of two dump trucks and other construction equipment is nominal consideration where total rental due under lease is $73,303). In *Crowder v. Allied Investment Co.,* 190 Neb. 487, 209 N.W.2d 141, 143 (1973), the court held that a purchase option price of $665 constituted nominal consideration, where the subject of the lease was a 1966 Kenworth truck, the lease term was 36 months, the monthly rental was $400, and a downpayment of $2500 was made at the inception of the lease. In *In re Nat'l Welding of Michigan, Inc.,* 17 B.R. 624, 626 (Bankr.W.D.Mich.1982), *rev'd on other grounds,* 61 B.R. 314 (W.D.Mich.1986), the bankruptcy court held that where a lease of a truck required over $40,000 in rent to be paid over the course of 60 months, a purchase option price of $734 would be considered nominal consideration. Where a lease of refrigeration units for a period of 48 months required lease payments in the amount of $104 per month, the $112 purchase option price contained in the lease was determined to be nominal consideration by the court in *Mid–Continent Refrigerator Co. v. Way,* 263 S.C. 101, 208 S.E.2d 31, 34 (1974).

According to the October, 1994, issue of the National Automobile Dealers Association Official Used Car Guide, the average trade in value of a 1990 Chrysler Imperial automobile is $8,725, the average loan value of the same automobile is $7,875, and the average retail value of the car is $11,025.[3] The Debtor

---

3. The N.A.D.A. publication is universally recognized as relevant and material evidence of the value of used automobiles, albeit some courts acknowledge the "average trade in value" as the appropriate figure, *In re Collins,* 151 B.R. 967, 970 (Bankr.M.D.Fla.1993); *In re Rossow,* 147 B.R. 1, 2 (Bankr.W.D.N.Y.1992); *In re Cook,* 38 B.R. 870 (Bankr.D.Utah 1984), while other courts rely on an average between the N.A.D.A. trade in value and the N.A.D.A. retail value. *In re Rowland,* 166 B.R. 172, 176 (Bankr.N.D.Fla. 1994); *In re Thayer,* 98 B.R. 748, 750 (Bankr. W.D.Va.1989). Obviously, the purchase option price in this case represents a substantial portion of the both the trade in value of the automobile and the retail/trade in average value of the automobile.

No testimony was offered on any of the issues in the case. Both parties presented memorandum in which they made factual assertions. The Debtor's attorney, in her memorandum, indicated that the Debtor contends that the value of the automobile is $12,000, and states, as a basis for that contention, that a representative of Chrysler told her that the automobile is worth $12,000.

contends that the value of the automobile is $12,000, and, as a basis for that contention, alleges that a representative of Chrysler told her that the automobile is worth $12,000. No other evidence of the fair market value of the car has been offered. The purchase option price included in the lease in this case, $8,391, is greater than the loan value of the Debtor's automobile, represents 96% of the trade in value of the automobile, represents 76% of the retail value of the automobile, and represents 70% of the value assigned by the Debtor to the automobile. The purchase option price, therefore, bears close resemblance to the value of the automobile, no matter which of the figures are accepted, and cannot, for that reason, be considered "nominal consideration."[4] In addition, the simple fact

---

Certainly the N.A.D.A. values are not necessarily conclusive. Other evidence of value may require either an upward or downward adjustment of the N.A.D.A. values, or otherwise demand that a figure other than the N.A.D.A. values be used. Also, this Court well recognizes that a property owner's opinion as to the value of the property is evidence of the property's value. However, even if the Debtor's valuation is accepted without qualification, or without consideration of the N.A.D.A. values, the purchase option price is still 70% of the Debtor's valuation and for that reason cannot be considered "nominal consideration."

4. See, e.g., In re Estep, 173 B.R. 126, 130 (Bankr. N.D.Ohio 1994) (purchase option price stated in lease as "fair retail value of the vehicle as set forth in the most current edition of the N.A.D.A. Used Car Guide" was not "nominal consideration" for 1992 Dodge Dakota truck); In re Zaleha, 159 B.R. 581, 586 (Bankr.D.Idaho 1993) (where lease was of 1991 Toyota 4WD Deluxe ExtraCab pick up truck for 60 months at $323 per month, purchase option price of $5,390 was not "nominal consideration" where average retail value of vehicle at end of lease term was $8,275); In re Lerch, 147 B.R. 455, 458 (Bankr. C.D.Ill.1992) (purchase option price of $2,679 for 1989 Ford Escort at end of 48 month lease was not "nominal consideration" where price represented 26% of the total rental due under the lease of $9,241); In re Wallace, 122 B.R. 222 (Bankr.D.N.J.1990) (where lease was of 1987 Buick Century automobile for $280 a month for 48 months, purchase option price described in lease as "average of the retail and wholesale values stated in the then current vehicle guidebook selected by the Lessor" was not "nominal consideration"); In re Haigler, 119 B.R. 531, 533 (Bankr.D.S.C.1989) (purchase option price of $3004 for automobile was not "nominal consideration"); In re Cole, 100 B.R. 561, 564 (Bankr. N.D.Okla.1989) ($4710 purchase option price in lease of 1986 Ford automobile for $293 a month for 48 months was not "nominal consideration"), aff'd, 114 B.R. 278 (N.D.Okla.1990); In re Farrell, 79 B.R. 300, 303 (Bankr.S.D.Ohio 1987) (where debtor had option to purchase 1983 Chevrolet van for its fair market value at the end of 48 month lease, purchase option price was not "nominal consideration" where vehicles of that nature typically have a fair market value after 4 years which is more than nominal); In re Carlson, 53 B.R. 62, 63 (Bankr.D.Or.1985) (purchase option price of $3,875 for 1982 Dodge was not "nominal consideration"); In re Boling, 13 B.R. 39, 45 (Bankr.D.Tenn.1981) (option to purchase trailers for 10% of original retail price was not "nominal consideration" where purchase option price bore resemblance to the fair market value of the property at the end of the lease); In re Universal Medical Services, Inc., 8 U.C.C. 614, 1970 WL 12640 (Bankr.E.D.Pa.1970) (option to purchase biochemical laboratory equipment for 10% of original retail price was not "nominal consideration" where purchase option price approximated the fair market value of the property at the end of the five year lease); Excel Leasing Co. v. Christensen, 115 Idaho 708, 769 P.2d 585, 588 (Ct.App.1989) (purchase option prices of $5300 and $1590 for 1979 International truck tractor and 1979 Wesco flatbed trailer exercisable at end of 60 month lease did not constitute "nominal consideration," even though monthly rental under lease was $1,901 and evidence showed that value of equipment might be more); Rebhun v. Executive Equipment Corp., 90 Misc.2d 576, 578, 394 N.Y.S.2d 792, 794 (N.Y.Sup.Ct. 1977) ($2,600 purchase option price was not "nominal consideration" for Mercedes Benz automobile, where total rental for 36 month lease was $14,256); Gibreal Auto Sales, Inc. v. Missouri Valley Machinery Co., 186 Neb. 763, 186 N.W.2d 719, 721 (1971) (purchase option price of $8500 was "substantial" and not "nominal" for over-the-road truck, where lease was for 36 months at $1000 per month); Goins v. Goins, 580 So.2d 477, 478 (La.Ct.App.1991) (where lease was of 1986 Saab automobile for 48 months at $437 per month, $7,621 purchase option price was "substantial sum" and not "nominal consideration"); In re Gonzalez, 219 Cal. App.3d 1598, 269 Cal.Rptr. 68, 71 (1990) (where lease was of 1984 Jeep for 29 months at $215 per month, for total rental of $6,235, purchase option price of the greater of the initial agreed value of $8,295 or 85% of the Kelly's Blue Book wholesale value estimated at $4,400, could "under no circumstances" be considered "nominal consideration"); Peterson v. Ford Motor Credit Co., 448 N.W.2d 316, 320 (Iowa 1989) (where lease was of 1985 Ford Bronco II for $287 per month for 48 months, purchase option price of $7,600 was a "substantial additional amount" and not "nominal consideration"); Woods v. General Electric Credit Auto Lease, Inc., 187 Ga. App. 57, 369 S.E.2d 334, 336 (1988) (purchase option price in an amount which would be the greater of the initial stated value of $24,427 less

that the Debtor is constrained to pay the purchase option price over a period of 18 months, as proposed in her Chapter 13 plan, is proof in itself that the purchase option price is substantial, rather than nominal.

■ The Debtor also alleges that her contract with Chrysler is a security interest, rather than a true lease, because under the terms of the contract, she retained certain incidents of ownership. Specifically, the Debtor emphasizes the fact that she bears the risk of loss for the property, pays insurance on the vehicle, and pays for the tags on the vehicle. However, "[a] transaction does not create a security interest merely because it provides that ... the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods." Ala.Code 1975, § 7–1–201(37)(c)(2).

■ "[I]n order to be viewed as creating a security interest, the lease agreement must provide the lessee with some ownership of the leased property." *Sharer v. Creative Leasing, Inc.*, 612 So.2d 1191, 1194 (Ala. 1993). The contract between the Debtor and Chrysler is a true lease, and does not create a security interest. It allowed the Debtor to use an automobile which is owned by Chrysler. Upon termination of the contract, the Debtor was required to return possession of the automobile to Chrysler, or buy it from Chrysler at a substantial price. The contract does not otherwise contemplate or provide for the Debtor to acquire any ownership interest in the automobile. Once the car has been returned, Chrysler is free to do whatever it wants to with it.

Because the arrangement between the Debtor and Chrysler is a lease, Chrysler's right to the automobile is not a "secured claim" under 11 U.S.C. § 506(a), and the Debtor may not treat Chrysler like a secured creditor under 11 U.S.C. § 1325(a)(5)(B) by paying the present value of the purchase option price of the lease through her Chapter 13 plan. *Accord, In re Lerch*, 147 B.R. 455 (Bankr.C.D.Ill.1992); *In re Wallace*, 122 B.R. 222 (Bankr.D.N.J.1990); *In re Haigler*, 119 B.R. 531 (Bankr.D.S.C.1989); *In re Farrell*, 79 B.R. 300 (Bankr.S.D.Ohio 1987). Since that is precisely what the Debtor proposes to do in her Chapter 13 plan, and because Chrysler is the only creditor listed by the Debtor in her bankruptcy petition, confirmation of the Debtor's proposed plan of reorganization must be denied.[5] Furthermore, since Chrysler is the owner of the automobile, Chrysler must be allowed to proceed under the lease agreement and state law to obtain possession of the automobile.

Based on the foregoing findings of fact and conclusions of law, the Court has determined that Chrysler's objection to the confirmation of the Debtor's plan should be sustained and

depreciation or 90% of the vehicle's Automotive Market Report "clean value" was not "nominal consideration" for 1983 Mercedes Sedan 240 leased for 60 months at $416 per month); *Ford Motor Credit Co. v. Sims*, 12 Kan.App.2d 363, 743 P.2d 1012, 1015 (1987) (purchase option price of $5,004 on lease of car for $256 per month for 48 months was not "nominal consideration"); *C. & S. Nat'l Bank of Savannah, Georgia v. Gilliam*, 285 S.C. 313, 329 S.E.2d 3, 5 (App. 1985) (where lease was of a 1979 Cadillac Seville for $282 per month for 36 months, purchase option price of $6,900 was not "nominal consideration"); *Mejia v. Citizens & Southern Bank*, 175 Ga.App. 80, 332 S.E.2d 170, 172 (1985) (purchase option price of $4,400 on lease of automobile for $234 per month for 48 months was more than "nominal consideration"); *Diede v. Davis*, 203 Mont. 205, 661 P.2d 838, 841 (1983) (where the lease was of a 1979 Freightliner truck-trailer, with an original retail value of $47,500, for 46 months, with rental of $1,500 per month for the first 24 months, and rental of $950

per month for the next 22 month, purchase option price of $7,500 was more than "nominal consideration" for a "heavily used truck which was not new at the beginning of the lease period").

5. While the hearing on the confirmation of the Debtor's plan and the objection to confirmation filed by Chrysler were continued generally pending the decision on Chrysler's relief from stay motion, both parties agree that the issues involved in the confirmation matters are the same as the issues involved in the relief from stay matter. Chrysler is the only creditor listed by the Debtor in her bankruptcy petition. The plan provides only for the "claim" of Chrysler and proposes simply to pay the purchase option price over a period of 18 months at the rate of $500 per month. The ruling on the relief from stay will remove the automobile from the estate and with it the very purpose of the plan. Confirmation of the plan in its present form, must, necessarily, therefore, be denied.

the motion for relief from stay should be granted. It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1. Chrysler's objection to the confirmation of the Debtor's Chapter 13 plan is sustained and confirmation of the plan is denied.

2. Chrysler is granted relief from the stay for the purpose of proceeding against the Debtor under the lease agreement and state law to gain possession of the subject automobile.

Done and ordered.