**SIGHT & SOUND OF OHIO, INC., Appellant,**

v.

**Samuel WRIGHT, George Ledford, Trustee, Appellees.**

**No. C–3–82–190.**

United States District Court, S.D. Ohio, W.D.

Nov. 4, 1983.

J. Timothy Cline, Jr., Dayton, Ohio, for plaintiff.

Christopher M. Hawk, Dayton, Ohio, for debtor Samuel Wright.

William P. Smith, William H. Howard, Dayton, Ohio, for George Ledford, trustee.

DECISION AND ENTRY AFFIRMING IN PART AND MODIFYING IN PART DECISION AND ORDER OF BANK-RUPTCY COURT; TERMINATION ENTRY

RICE, District Judge.

This matter is before the Court on an appeal from a decision of the Bankruptcy Court, denying the relief requested in an adversary proceeding initiated by Plaintiff-Appellant Sight & Sound of Ohio, Inc., dba S & S Rent-a-Center ("Sight & Sound"). Specifically, Sight & Sound, in its Complaint below, sought to regain possession of a refrigerator which it claimed to have leased, not sold, to the Debtor-Appellee, Samuel Wright. Sight & Sound claimed that as lessor of the refrigerator, it had

retained ownership and thus had the lessor's reversionary interest in the property which it argued it could rightfully exercise in view of the Debtor's failure to keep current on the alleged rental payments.

The Debtor and the Trustee in the Debtor's Chapter 13 proceeding resisted Sight & Sound's efforts to repossess the refrigerator by countering that the lease was in truth a conditional sale; that the purported lease agreement in fact was intended to create a security interest; and that, as ownership had passed to the Debtor, the reorganization plan could include Sight & Sound as a secured creditor but that Sight & Sound was not entitled to repossess the refrigerator.

The Bankruptcy Court below found that the agreement was in fact an installment sale and not a lease and that, as Sight & Sound had failed to perfect its security interest by filing a financing statement, the Trustee's interest in the refrigerator took priority over the unperfected security interest of Sight & Sound.

This controversy presents to the Court the oft litigated issue of whether a self proclaimed "lease" of equipment or personal property is in fact a lease or whether in truth it is a disguised installment sales contract. *See* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 22–3, at 878 (2d ed. 1980).

As discussed below, the Court agrees with the overall conclusion of the Bankruptcy Court that the "lease" agreement was intended as security and thus the Debtor may retain the refrigerator. Though it does not alter the outcome of the Bankruptcy Court's decision, this Court finds, however, that the Uniform Commercial Code (UCC) Article 9[1] analysis engaged in by the Court below is inaccurate. Therefore, this Court will clarify which corresponding Ohio Revised Code sections are in fact applicable in resolving the interests of the parties herein.

## I. THE AGREEMENT

The Court notes that in considering an appeal from a Bankruptcy Court, the Court shall not set aside findings of fact unless clearly erroneous. Bankr.Rule 8013, 11 U.S.C.A. Having reviewed the Findings of Fact set forth in the Decision and Order of the Bankruptcy Court, this Court finds them to be an accurate summation of the pertinent terms of the agreement at issue in this case, as well as of the undisputed sequence of events leading up to the filing of the Adversary Proceeding below. The Court, therefore, adopts these factual findings and incorporates them into this Decision and Entry to serve as a foundation for the ensuing discussion:

The instant controversy focuses on a "Rental Agreement," executed by Plaintiff and Debtor on 3 February 1981, whereby Plaintiff "leased" a refrigerator to Debtor for a "weekly rental rate" of $14.95 plus tax. The Rental Agreement specifically provides that Plaintiff retain title to the refrigerator, and that Debtor has the option to terminate at any time by returning the property to Plaintiff. The term of the "lease" is one week, renewable indefinitely. The Agreement also provides that if Debtor misses a payment without return of the refrigerator to Plaintiff, Debtor would be in default. In the event of default, the agreement specifies that the lease would continue as a "day-to-day" rental agreement for a "daily rate" of $2.50 plus tax. Debtor could "reinstate" the agreement as a "week to week rental" by payment of all arrearages plus a $5.00 reinstatement fee and the rental for the next week in advance. The Agreement provides that, after 72 successive weekly "terms," Debtor could "elect" to continue or terminate the agreement, or "purchase the (refrigerator) by paying (Plaintiff) the then fair market value of the (refrigerator); such value being difficult of ascertainment and dependent upon the condition of the (refrigerator), future economic conditions

1. Article 9 of the Uniform Commercial Code dealing with secured transactions is contained in O.R.C. Chapter 1309.

and other factors, the parties hereby agree that for purposes of this option the fair market value shall not exceed $69.75." The Disclosure Statement appended to the Agreement, (to comply with relevant Federal Reserve Board regulations), also provides that, "In the event this option (to purchase) is exercised, the total amount paid for the leased property will not exceed ... $1,151.15." The heading above the text of the Rental Agreement reads, in bold red type, "This is a Rental Agreement Only."

The pertinent facts precipitating the instant controversy are not disputed. Debtor made the regular weekly "rental" payments until 4 July 1981. Debtor then filed the instant Petition on 13 July 1981. Debtor's Schedules list Plaintiff as a fully secured creditor for $217.50 owing on the refrigerator. On 30 July 1981, Plaintiff filed the instant Complaint requesting relief from the automatic stay on the grounds that Plaintiff's claim is inadequately protected and that Debtor lacks equity in the refrigerator. Plaintiff further requests denial of confirmation of Plaintiff's Chapter 13 Plan insofar as it relates to Plaintiff's claim.

## II. LAW APPLICABLE TO THE AGREEMENT

The initial step to be taken in resolving the respective rights of Sight & Sound and the Debtor and Trustee to the refrigerator must be to determine the true character or nature of the agreement through which the Debtor gained possession of the refrigerator in exchange for periodic payments to Sight & Sound. This inquiry begins with ORC § 1309.02(A)(1) (UCC 9–102(1)(a)) which provides in relevant part:

(A) ... Sections 1309.01 to 1309.50 [the Secured Transactions provisions] of the [Ohio] Revised Code apply:

(1) To any transaction, regardless of its form, which is *intended to create a security interest* in personal property or fixtures including goods....

(emphasis added)

The Official Comment to this provision clarifies that the drafters of Article 9 of the U.C.C. intended the substance of an agreement, not its form, to govern whether the parties must comply with the Secured Transactions provisions to protect their respective interests in the subject matter of an agreement. As articulated by the drafters of Article 9, "The main purpose of this Section is to bring all consensual security interests in personal property and fixtures under this Article, except [those specifically excluded]." U.C.C. § 9–102 Official Comment.

A second provision applicable to determining whether the purported lease was intended to create a security interest is that section which defines the phrase "security interest", O.R.C. § 1301.01(KK) (UCC § 1–201(37)), which includes within that definition the following explanation:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The application and interpretation to be accorded these provisions have received extensive judicial treatment in a number of state and federal courts, but unfortunately, as noted by the Franklin County Municipal Court in a recent case requiring application of these provisions, "there is a dearth of cases on the subject in Ohio." *Columbus Motor Car Co. v. Textile-Tech, Inc.,* 68 Ohio Misc. 25, 428 N.E.2d 882, 884 (Mun.Ct.1981). Thus, this Court has little guidance from Ohio courts on what they deem to be the proper construction to be given to these provisions in determining whether an agreement, such as that at issue in this case, is in fact a lease or was intended to create a security interest.

The courts addressing the issue have generally agreed that the inquiry into whether the parties "intended" to create a security interest is fact sensitive. *See, e.g., Matter of Tillery,* 571 F.2d 1361 (5th Cir.1978); *In re Pye,* 13 B.R. 307 (Bkrtcy.Me.1981); *In re J.A. Thompson & Son, Inc.,* 665 F.2d 941 (9th Cir.1982); *In re Mountain Carpet, Inc.,* 11 B.R. 729 (Bkrtcy.Vt.1979). Some courts have adopted a three-prong test to apply in analyzing whether the facts presented establish that the agreement was intended to create a security interest. *See, e.g., Livesey Enterprises v. Smith Management,* 8 B.R. 346 (Bkrtcy.W.D.Wisc.1980) (a "lease" is in fact intended to create a security interest if: 1. the agreement requires the lessee to pay the lessor a set amount; 2. the amount to be paid must be equivalent to the value of the leased goods at the time the lease was entered; 3. the lessee must become the owner or have the option to become the owner of the leased goods for nominal consideration); *accord, Borg-Warner Acceptance Corp. v. Dugger,* 9 B.R. 85 (Bkrtcy.N. D.Tex.1981). Other courts have declined to articulate a particular test as such and have engaged in an inquiry that takes into consideration all of the facts surrounding the agreement, as well as the true relationships and economic realities created by the agreement notwithstanding its purported purpose of serving as a lease agreement. *See, e.g., In re Eastern Equipment Co.,* 11 B.R. 732 (Bkrtcy.S.D.W.Va.1981); *In re Northern Boneless Meat Corp.,* 9 B.R. 27 (Bkrtcy. W.D.N.Y.1981); *Matter of Tillery,* 571 F.2d 1361 (5th Cir.1978); *In re Boling,* 13 B.R. 39 (Bkrtcy.D.Tenn.1981); *In re Pye,* 13 B.R. 307 (Bkrtcy.Me.1981); *In the Matter of Brookside Drug Store, Inc.,* 3 B.R. 120 (Bkrtcy.D.Conn.1980). Courts have also concluded that whenever a lease contains an option to purchase for no, or nominal, consideration then the lease is to be presumed to have been intended as security and no other facts need be examined. *See, e.g., In re J.A. Thompson & Son, Inc.,* 665 F.2d 941 (9th Cir.1982); *In re National Welding of Michigan, Inc.,* 17 B.R. 624 (Bkrtcy.W.D.Mich.1982). Of course, what is considered to be "nominal" consideration

has received divergent treatment by the courts. As discussed in the Annotation in 76 A.L.R.3d 11, in determining whether the option price is "nominal", the option price has been compared with the market value of the item at the date of exercising the option, with the original cost of the equipment, or with the total amount of rent paid. Other courts have adopted what might be viewed as a more practical sort of analysis which may incorporate any one or all of the above comparisons but is couched in terms of whether the lessee has no choice but to exercise the option, that is, based upon the facts before the Court, the only sensible alternative available to the lessee would be to exercise the option. 76 A.L.R.3d 11, § 7.

The Bankruptcy Court below appears to have adopted that approach to analyzing the agreement in this case which takes into consideration all the relevant factors without articulating a rigid test or set of criteria that must be met. The court found particularly persuasive the fact that the Debtor could exercise his option to purchase the refrigerator for what the court determined to be nominal consideration. In arriving at the conclusion that the option price was nominal, the Court considered the relative newness of the refrigerator and reasoned that, having paid an annual rental fee of $717.60 for two years, the potential duration of the rental agreement, a lessee would not plausibly choose the alternative presented in the contract of continuing to lease at $717.60 per year when he could exercise his option to purchase the refrigerator outright for $69.75. The court also reasoned that "the Disclosure Statement" attached to the Rental Agreement indicates beyond doubt that the parties intended a maximum payment by the "lessee" of $1,151.15, (exactly $69.75 over the aggregate of rental payments for 72 terms), with an automatic title transfer once this maximum is reached." *Sight & Sound v. Wright,* Adv. No. 3–81–0492, pp. 2–3 (Bkrtcy.S.D. Ohio March 22, 1982).

■ In determining the propriety of the Bankruptcy Court's conclusions, this Court must first determine whether the court be-

low applied the proper analysis in reaching its conclusion. The Court agrees with the Bankruptcy Court that the appropriate course to follow is to analyze all the relevant factors surrounding the lease agreement and relationships created therein, in determining if the parties in fact intended to create a security interest. The Court finds this approach preferable to adoption of a rigid test or set of criteria because of the fact sensitive nature of the inquiry and the need for a flexible analytical framework that enables the court to analyze the totality of the facts presented. This broad based inquiry, however, must be cut short whenever it is determined that the purported lease provides that "upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration." O.R.C. § 1301.01(KK) (UCC § 1–201(37)). In such instances, the applicable statutory provision compels the legal conclusion that the lease was intended for security. *See, In re J.A. Thompson & Son,* 665 F.2d at 947; *In re National Welding of Michigan,* 17 B.R. 624 (Bkrtcy.1982); *In re Teel,* 9 B.R. 85, 87 (Bkrtcy.N.D.Tex.1981).

In determining whether the option to purchase may be exercised for nominal consideration, the analysis should focus on whether the lessee has no plausible alternative but to exercise the option either because of the substantially greater market value of the property at the date the option may be exercised, or because of other factors relevant to the particular agreement, such as those present in this case (i.e., the substantially less attractive option to continue renting the property or purchase it outright for a comparatively nominal amount). *See, id.* See also cases cited in Annot. 76 A.L.R.3d 11, § 8. Where, however, there is any question concerning whether the option price can be properly characterized as nominal, the Court finds that the inquiry must once again broaden to look for other relevant factors which either undercut or bolster the conclusion that the lease was intended for security.

## III. DISCUSSION OF NATURE OF AGREEMENT

Turning to the facts presented in this case, the Court notes that the record does not contain a factual finding as to the market value of the refrigerator at the date the Debtor could have exercised the option or for that matter, at the date the lease was initiated. Though the Court tends to agree with the Bankruptcy Court that the only really plausible alternative available to a lessee at the end of the two year lease agreement would be to purchase the refrigerator outright, the Court does not feel that it can hold, as a matter of law, that the option price of $69.75 is nominal, absent some factual finding as to the market value of the refrigerator at the date the option could be exercised or some other factual basis upon which the age and condition of the refrigerator could be determined.

The Court, therefore, finds it necessary to examine the other terms of the self-described lease agreement, as well as other relevant facts surrounding the agreement, to determine if it should be characterized as an agreement intended as security. The Court finds the following facts buttress the conclusion that the lease was intended as security: the lessee was responsible for paying sales tax along with the weekly rental payment, (Disclosure Agreement ¶ 7); the risk of loss, destruction, or damage was upon the lessee (*Id,* ¶ 9), the Disclosure Statement reflects that at the date the agreement was entered, the parties contemplated the payment of a sum certain of $1,151.15 (*Id,* ¶ 14); the aggregate rentals contemplated by the lease appear to approximate what the purchase price would be if said price included an interest rate, at the very least equal to, and probably in excess of, the maximum interest rate in Ohio for Retail Installment Sales provided in O.R.C. § 1317.06; the option to purchase was absolute, that is, the lessee possessed an absolute right to exercise the option upon performance of the terms of the lease agreement. *See, In the Matter of Brookside Drug Store, Inc.,* 3 B.R. 120 (Bkrtcy.D. Conn.1980) (wherein the court identifies nu-

merous factors, including those just discussed which have been construed as tending to establish that a lease was in fact intended as security).

The Court notes that there are provisions in the lease which tend towards establishing that the agreement was in fact a lease and not intended as security. For example, the agreement, entitled "This is a Rental Agreement Only," provides that title to the property remains with Sight & Sound, the "owner", and provides that the agreement only constitutes an agreement for week-to-week rentals. Moreover, the Disclosure Statement provides that Sight & Sound expressly does not reserve any security interest in connection with the lease, notwithstanding its right to repossession upon default, and does not provide for any sort of initial down payment.

■ On balance, the factors discussed above weigh in favor of finding that the Rental Agreement was in fact contemplated by the parties as one intended as security and that, upon compliance with its terms, the lessee-Debtor would have no plausible alternative but to exercise the option to purchase.[2] The Court finds particularly persuasive the fact that the "lease" was to have lasted for two years and to have resulted in a sum certain being paid to Plaintiff upon exercise of an option to purchase at a then existing market value predetermined in the agreement as being a mere $69.75.

## IV. RESOLUTION OF THE PARTIES' RESPECTIVE INTEREST IN THE REFRIGERATOR

Having determined that the lease was in fact intended as security, the Court must determine which of the parties has the superior right to the refrigerator. The Bankruptcy Court found that as Sight & Sound failed to file a financing statement to perfect its security interest, then the Trustee who has, "as of the commencement of the case ... the rights and powers of" a judicial lien creditor (11 U.S.C. § 544(a)(1)) has an interest in the refrigerator which takes priority over Sight & Sound's interest as an unsecured creditor pursuant to O.R.C. § 1309.21(A)(2) (UCC § 9–302(1)(b)) which gives a lien creditor priority over the unperfected security interest of a creditor.

■ The Bankruptcy Court errs, however, in its conclusion that filing of a financing statement pursuant to ORC §§ 1309.38 & 1309.39 (UCC §§ 9–401 & 402) is a necessary prerequisite to perfecting a security interest in goods such as the refrigerator in question. O.R.C. § 1309.07(A) (UCC § 9–109(1)) defines "consumer goods" as those goods which "are used or bought for use primarily for personal, family or household purposes." A household refrigerator would thus fit within this definition. O.R.C. § 1309.22(A) (UCC § 9–303(1)) provides that "a security interest is perfected when *it has attached and* when *all of the applicable steps* required for perfection *have been taken.*" (Emphasis added) The additional steps that may be applicable are contained in sections 1309.21 (UCC § 9–302), 1309.23 (UCC § 9–304), 1309.24 (UCC § 9–305), and 1309.25 (UCC § 9–306).

Thus, the first step that is necessary to becoming a secured creditor is attachment which is defined in O.R.C. § 1309.14 (UCC § 9–203) as follows:

A security interest is not enforceable against the debtor or third parties with

---

**2.** The Court notes that Plaintiff-Appellant contends that the Bankruptcy Court wrongfully placed the burden of proof on Plaintiff to establish that the lease was not a security agreement but was in fact a lease. The Court does not read the Bankruptcy Court's Decision as placing such a burden on Plaintiff. Clearly, Plaintiff seeking relief from the automatic stay had the burden of establishing that the agreement was a lease and that it had demonstrated "cause" for relief from the stay as required by

Bankr.R.P., Rule 601(c). Moreover, Plaintiff had the burden of going forward and meeting the proof presented to the Debtor and Trustee that tended towards establishing that the agreement was intended as security. As the Court does not understand the Bankruptcy Court to have placed any greater burden on Plaintiff than that which was proper, the Court finds no substance to Plaintiff's contention that the court below erred in its analysis of Plaintiff's burden of proof.

respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(2) value has been given; and

(3) the debtor has rights in the collateral.

O.R.C. § 1309.01(A)(12) (UCC § 9–105(1)(*l*)), which defines "security agreement", must be read in conjunction with the definition of attachment in section 1309.14. White & Summers, *Uniform Commercial Code,* pp. 904–910. The definition of security agreement is "an agreement which creates or provides for a security interest." Thus, the written agreement referred to in Section 1309.14(A)(1) must provide for a security interest. *Id.*

■ The second step necessary in becoming a secured creditor is to determine whether further steps, such as the filing of a financing statement are necessary to perfect the security interest. With respect to consumer goods, such as the refrigerator at issue in this case, O.R.C. § 1309.21(A)(4), (UCC § 9–302(1)(d)) provides that a financing statement need not be filed to perfect a purchase money security interest in consumer goods and thus according to Section 1309.20(A) (UCC § 9.303(1)) such an interest is perfected upon attachment. With respect to the present transaction, having characterized the lease as one intended as security, the Court further finds that the nature of the transaction fits within the definition of purchase money security interest provided in O.R.C. § 1309.05 (UCC § 9–107), to wit: "A security interest is a 'purchase money security interest' to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its [(the collateral's)] price ...." This is the case because Sight & Sound as lessor or seller, used the refrigerator, the property leased or sold as collateral, to secure the lessee's or buyer's payments. Thus, as the transaction in question was in substance a sale of consumer goods involving a purchase money security interest, the creditor's interest would have been perfected upon attachment and the filing of a financing statement would have been an unnecessary step.

■ As there is a writing, signed by the Debtor which describes the collateral, whether attachment took place in the present matter hinges upon the determination of whether the rental agreement created or provided for a security interest. The Court agrees with the reasoning in *In re Walter W. Willis, Inc.,* 313 F.Supp. 1274 (N.D.Ohio 1970) that making this determination in lease agreements, construed as intended for security, should involve a broader factual inquiry than merely searching the terms of the lease for certain language indicative of the granting of a security interest. *Id.* at 1278–79. As explained therein:

The Court believes that a lease intended as security presents a different situation in that the facts in each case determine whether a security interest was intended. Thus, in a transaction where a lease is intended as security, *factors outside of the lease* as well as the contents of the lease itself must be considered in ascertaining the intent of the parties. Since the intent of the parties must be ascertained from the contents of the lease itself as well as from factors outside the lease, it seems reasonable to conclude that the contents of the lease are not determinative on whether there was a security interest being created or provided for. Accordingly, the Court feels that in a transaction where lease is intended as security, the debtor, as in the case at bar, at the least must sign a written instrument (the so-called lease) describing the collateral in order to comply with O.R.C. § 1309.14(A)(2). Language to the effect that a security interest is being created or provided for need not be included in the so-called lease.

*Id.* at 1278 (citations omitted).

The court in *In re Willis,* however, was addressing a lease of equipment for which

filing is necessary for perfection and the court found this added requirement of filing sufficient to provide notice to other creditors of the existing security interest and thus prevent any risk of prejudice to them. The nature of the transaction in the present proceeding, as discussed above, would ostensibly obviate the need for filing of a financing statement for the creditor-lessor to perfect its security interest. Thus, if a creditor sought to avoid having a transaction subject to the strictures of the Secured Transaction provisions and the Ohio Retail Installment Sales provisions contained in Chapter 1317 of the O.R.C., he could couch the agreement in terms of a lease and gamble that a court would so construe the document. If, on the other hand, a court found the lease to be intended as security, if the underlying property were consumer goods, the creditor could still prevail against unsecured creditors or a trustee in bankruptcy by arguing that the lease need not contain express language creating a security interest in order for attachment and, in this instance, perfection to take place.

The Court in the present proceeding, however, need not decide whether a lease construed as creating a purchase money security interest in consumer goods must always contain express language creating a security interest, as the lease presently under consideration not only did not contain such a provision, but, more importantly contained an express disclaimer that the lessor was retaining any security interest. Thus, Plaintiff Sight & Sound clearly sought to extricate itself from the provisions of Article 9 (O.R.C. Chapter 1309) and cannot now seek the protection afforded by its provisions to creditors who supply consumer goods through purchase money security agreements. The Court concludes, therefore, that attachment of the security interest did not take place and that the interests of the Plaintiff in the refrigerator are subordinate to those of the Debtor and the Trustee. The Court, therefore, agrees with the conclusion of the Bankruptcy Court that Sight & Sound's interest is that of a general creditor and that Debtor's plan should be amended to reflect Sight & Sound's status as an unsecured, as opposed to a secured, creditor. The Bankruptcy Court's Decision and Entry is, therefore, affirmed, subject to the clarification and modification of the provisions of O.R.C. Chapter 1309 applicable to identifying the interests of the parties.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.