**In the Matter of Leslie and Phyllis ROSE, Debtors.**

**George W. LEDFORD Chapter 13 Trustee, Plaintiff,**

**v.**

**NRM, INC., Defendant.\***

**Bankruptcy Nos. 3–87–01507, 3–87–00534, 3–87–00554, 3–87–00401 and 3–87–00678. Adv. Nos. 3–87–0173, 3–87–0175, 3–87–0203, 3–87–0174 and 3–87–0169.**

**United States Bankruptcy Court, S.D. Ohio, W.D.**

**Sept. 22, 1988.**

Jeffrey P. Albert, Dayton, Ohio, for debtors.

Bruce A. Buren, Dayton, Ohio, for defendant.

George W. Ledford, Englewood, Ohio, Trustee.

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B, C, K, M, O). The plaintiff, the Chapter 13 Trustee, seeks a determination that the agreements in these five (5) cases, all of which involve similar, but not the same, legal and factual issues, are secured sales agreements disguised as leases. This issue is before the court on the plaintiff's Motions For Summary Judgment (Doc. 13 in this Adversary No. 3–87–0173, Doc. 14 in Adversary No. 3–87–0174, Doc. 13 in Adversary No. 3–87–0175, Doc. 12 in Adversary 3–87–0169, Doc. 9 in Adversary 3–87–0203) and the defendant's Memoranda In Response To Motion

---

\* And (Related Adversaries): Dennis Geehan (Defendant Rent–Rite, Inc.); William & Janet Scott (Defendant Arcorp, Inc.); Pamela Richards (Defendant Long Rent To Own, Inc.); Belvis & Patricia Ringer (Defendant Arcorp, Inc.).

For Summary Judgment (Doc. 21 in this Adversary 3–87–0173, Doc. 22 in Adversary 3–87–0174, Doc. 21 in Adversary 3–87–0175, Doc. 21 in Adversary 3–87–0169, Doc. 17 in Adversary 3–87–0203).

The debtors in each case entered into what the defendants characterize as a rental agreement. *See* Appendix A, for a copy of the agreements in this Adversary 3–87–0173, and Adversaries 3–87–0174, 3–87–0203, 3–87–0169, and Appendix B for a copy of the agreement in Adversary No. 3–87–0175.

All of these agreements share similar provisions in that the customer agrees to a weekly payment for the use of the property with an option to renew the agreement for pre-determined period of time (App. A at par. 1 and 8(a); App. B at par. 1.); and, if the customer continues the payments pursuant to the agreement for the pre-determined period, the ownership of the property is transferred to the customer upon completion of the payments for no additional consideration from the customer and the agreement terminates.

Additionally, in the Shastar agreements (App. A), the customer is given the option to purchase the property prior to completion of the pre-determined period by paying 60% of the remaining balance. App. A at 8(b). The Rent–Rite agreement (App. B) does not contain such a provision.

In these five (5) cases, prior to completion of the payments required for ownership, the debtors filed Chapter 13 petitions and listed the defendant companies as unsecured creditors. The defendants all filed proofs of claim as lessors. *See* Doc. 1, Exhibits A, B, C.. In this adversary the Chapter 13 Trustee filed a Complaint And Counterclaim To Proof Of Claim (Doc. 1) which asks the court to "[f]ind that the claim of defendant is an installment sales contract; disallow the claim of defendant as filed; and authorize the defendant to file an amended unsecured proof of claim." The Chapter 13 Trustee, subsequently stated that for purposes of these motions for summary judgment only, if the court found these agreements were not true leases, the trustee would not dispute that the defend-

ants have a purchase money security interest in the property.

In this adversary the defendant filed an Answer (Doc. 3). The trustee and the defendants filed similar Complaints and Answers in each of the other adversaries (3–87–0174, 3–87–0175, 3–87–169 and 3–87–0203). In addition to reviewing the trustee's Complaints, the defendants' Answers, the trustee's Motions For Summary Judgment and the defendants' Memoranda In Response To The Motions For Summary Judgment, the court also considered the oral arguments of counsel for the defendants and the Chapter 13 Trustee.

The trustee argues that these agreements were actually intended by the parties to act as secured installment sales contracts. Doc. 13 at 2. He supports this conclusion by noting that none of the agreements require additional consideration before ownership is transferred at the end of the pre-determined period. Doc. 13 at 2, 3.

The defendant argues that the agreements only require a one week rental period and at the end of any weekly rental period the customer may return the property without ownership and without any further obligation. Accordingly, he concludes these agreements are true leases (Doc. 21 at 7, 8).

The issue presented in these five (5) adversaries is familiar in bankruptcy proceedings. *See Sight and Sound of Ohio v. Wright,* 36 B.R. 885 (D.S.D.Ohio 1983); *Consumer Lease Network v. Puckett, In re Puckett,* 60 B.R. 223, cases collected at footnotes 25 and 26 (Bankr.M.D.Tenn. 1986); *aff'g per curiam sub nom Consumer Lease Network, Inc. v. Nancy Sue Puckett et al.,* 838 F.2d 470 (6th Cir.1988); *American Way Rentals v. Fogelsong, (In re Fogelsong),* 88 B.R. 194 (Bankr.C.D.Ill. 1988).

Although this court shares the view that the determination of this issue involves analyzing all relevant factors surrounding the agreement and the relationships created therein, the resolution of this issue is controlled by state law. *Sight and*

*Sound, supra* at 885; *See also, In re Puckett, supra,* at 234. The relevant Ohio Revised Code provision which governed these agreements at the time they were executed provided:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security. Ohio Rev.C. § 1301(KK) (Anderson Supp.1987) (See also U.C.C. 1–201(37))

■ This provision of the Ohio Revised Code (§ 1301.01(KK)) was considered in *Sight and Sound, supra,* by District Judge Walter H. Rice, in an appeal from a decision issued by former Bankruptcy Judge Charles A. Anderson of this court. In his decision, Judge Rice noted,

> This broad based inquiry [analyzing all relevant factors surrounding the agreement and the relationships created therein], however, must be cut short whenever it is determined that the purported lease provides that upon compliance with the terms of the lease, the leasee shall become, or has the option to become, the owner of the property for no additional consideration or for nominal consideration. ORC § 1301(KK) (U.C.C. § 1–201(37)). In such instances, the applicable statutory provision, *compels* the legal conclusion that the lease was one intended for security. (citation omitted) *Sight and Sound* at 890 (emphasis added).

It must be recalled that this issue is before the court in all five adversary proceedings on a motion for summary judgment filed by the Chapter 13 Trustee. As this court noted in *Matter of Warner,* 65 B.R. 512, 516 (Bankr.S.D.Ohio 1986),

> The cases interpreting the various provisions of Rule 56 have produced an evolving body of law that has continued to emphasize standards which require both a moving and a nonmoving party to give careful attention to the presentation and defense of a motion for summary judgment. The two recent decisions from the United States Supreme Court reflect the careful attention required by all parties involved in a motion for summary judgment.

In *Anderson,* the Court held that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden," *Id.,* 477 U.S. at 254, 106 S.Ct. at 2513, *i.e.,* "whether a jury [fact finder] could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* (emphasis in original).

In *Celotex* [*Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)], the Court established the standard under which a trial court should rule on a motion for summary judgment:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of

proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Id.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

This statement from the Court resolved the question of whether the party who does not bear the ultimate burden of proof at the trial of an issue must, as the movant in a motion for summary judgment, through the presentation of specific evidence negate the nonmovant's case in order to establish that there is no "genuine issue of material fact," thereby entitling the movant to summary judgment. A moving party in motion for summary judgment meets its burden by affirmatively demonstrating from the record that is before the court that there is no evidence to support an essential element of the nonmoving party's case.

In this adversary proceeding, the Shastar lease, (App. A), permits the lessee to exercise an absolute option to purchase the property at any time prior to the final 90 days of the lease, (App. A, pg. 2, par. 8(b)) and permits a transfer of ownership at the end of the lease term without additional consideration. Additionally, the operation of the purchase option price formula appears to provide the lessee with equity in the property by allowing the payments made by the debtor to be credited toward the purchase of the property. *Id.* Although the agreement contains language and elements consistent with a true lease, when the total language and elements of the contract are considered, including the specific language in the agreement providing for an "amount paid to own item," (App. A pg. 1 at numeral 1) and the absolute option to purchase, it follows that the parties intended the debtor to obtain ownership of the property and the agreement is one intended for security. With regard to these leases (App. A-this adversary 3–87–0173, and adversaries 3–82–0174, 3–87–0203 and 3–87–0169), upon the facts presented, the conclusion that they are not true leases, but rather disguised installment purchases, is completely consistent with, if not compelled by, the relevant provision of the Uniform Commercial Code as adopted in Ohio Revised Code Section 1301.01(KK).

The Rent–Rite lease (App. B), does not provide for a purchase option during the pendency of the lease; however, it does provide for a pre-determined amount to be paid for a pre-determined period which, when completed, will result in ownership of the property for no additional consideration. The agreement also places all risk of loss or damage on the lessee, and, as noted, the transfer of ownership at the end of the agreement does not require the payment of any additional consideration. Again, upon review the facts presented, the Rent–Rite, Inc. agreement (App. B, Adversary 3–87–0175) is also determined not to be a true lease as contemplated by the provisions of Ohio Revised Code § 1301.01(KK).

In these five adversaries, when the evidence that has been presented in connection with the various motions for summary judgment, (App. A, App. B, Doc. 1, Exhibits A, B, C), is "viewed through the substantive evidentiary burden", it is clear that there has been a complete failure of proof on an essential element of the nonmoving parties' case, specifically, any evidence that would remove these agreements from the provisions of Ohio Revised Code § 1301.01(KK) as interpreted in this district in *Sight and Sound, supra.* Accordingly, the Chapter 13 Trustee, the moving party, has met the burden of affirmatively demonstrating from the record before the court that there is no evidence to support an essential element of the nonmoving party's (the defendant's) case.

The court recognizes that this decision may be without prospective effect. The Ohio General Assembly has recently enacted legislation which defines lease purchase agreements [Ohio Revised Code § 1351.01(F) effective June 29, 1988] and amends Ohio Revised Code § 1301.01(KK) to provide in part,

A LEASE–PURCHASE AGREEMENT AS DEFINED IN DIVISION (F) OF SECTION 1351.01 OF THE REVISED

CODE SHALL NEVER BE INTENDED AS SECURITY.

For the above reasons, the Motion Of The Trustee For Summary Judgment is HEREBY GRANTED. A copy of this decision and an order in accordance with this decision is contemporaneously entered in each of the five related adversaries.

SO ORDERED.

## APPENDIX A

EXHIBIT "A" TO RENTAL AGREEMENT **28** № **00178**

DATE: _3·3·87_

| PARTIES | |
|---|---|
| OWNER: | NRM, INC. dba/SHASTAR |
| | Northmont Plaza |
| | 606 Taywood Road |
| | Englewood, Ohio 45322 |

RENTER: _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_
SOCIAL SECURITY NUMBER

_Leslie Rose_
NAME

_3691 Waterbury_
ADDRESS

_Kettering_ _OH_ _45439_
CITY        STATE   ZIP CODE

_293-2383_      _R_
TELEPHONE        TYPE

**PAYMENT INFORMATION**
Payments are to be made (WEEKLY) MONTHLY. Rent Payment is $ _20.95_ _____. Initial payment covers the
(Circle One)
period beginning on date of delivery. Scheduled payment is due on _Saturday_ _____. The total number of pay-
Day
ments is _47 weeks_ .

**DESCRIPTION OF ITEMS**

1. Brand _England_ — Description _Sofa_
   Owner ID _1220_ — Model _2825_
   Serial _8459_  _1220_  _N_  (New or Prev. Rented)
   Portion of rent applying to this item $ _20.95_ — Total amount paid to own item $ _984.65_

2. Brand _____ — Description _____
   Owner ID _____ — Model _____
   Serial _____ — New or Prev. Rented
   Portion of rent applying to this item $ _____ — Total amount paid to own item $ _____

3. Brand _____ — Description _____
   Owner ID _____ — Model _____
   Serial _____ — New or Prev. Rented
   Portion of rent applying to this item $ _____ — Total amount paid to own item $ _____

4. Brand _____ — Description _____
   Owner ID _____ — Model _____
   Serial _____ — New or Prev. Rented
   Portion of rent applying to this item $ _____ — Total amount paid to own item $ _____

5. Brand _____ — Description _____
   Owner ID _____ — Model _____
   Serial _____ — New or Prev. Rented
   Portion of rent applying to this item $ _____ — Total amount paid to own item $ _____

6. Brand _____ — Description _____
   Owner ID _____ — Model _____
   Serial _____ — New or Prev. Rented
   Portion of rent applying to this item $ _____ — Total amount paid to own item $ _____

**IMPORTANT — READ CAREFULLY**

When you receive Item or Items that you have agreed to Rent, you must examine each Item closely to make sure that it is exactly the same as each Item described above.

Merchandise Received by _Leslie Rose_ _____ Delivery Date _3-3-87_

PLEASE NOTE! YOUR NEXT PAYMENT IS DUE ON _3-7-87_

APPENDIX A — PAGE ONE

WHITE—OFFICE COPY      YELLOW—CUSTOMER COPY      PINK—DELIVERY COPY      GOLDE

### RENTAL AGREEMENT

This agreement is made by NRM, Inc. dba/SHASTAR (Owner) and the (Renter) named in Exhibit A attached to this agreement.

Owner agrees to rent the Items identified in the Description of Rented Items in Exhibit A to Renter on a periodic basis, and to maintain the Items for Renter; and Renter agrees to pay Owner in advance the Rent Payment shown in Exhibit A for each rental period and also agrees to comply with all the other terms contained in this Agreement.

The terms of this Agreement are:

1. **Rent.** The Renter will pay Owner, as a rental and maintenance fee for the Items, the Rent Payment shown in Exhibit A, plus any applicable sales tax.

2. **Rent Due Date.** Rent will be paid according to the schedule shown in Exhibit A.

3. **Late Payment.** If Rent is not paid on the day it is due, Renter will pay Owner an additional Late Payment Charge of $2.00 for every day that any of the Rent payment remains unpaid.

4. **Renter's Use of Items.**

    (a) The Renter will keep the Items in good condition, will use the Items in a normal way, and will be careful to avoid damaging or losing the Items.

    (b) The Renter will always keep the Items at the Renter's address stated in Exhibit A, and will not allow the Items to be moved or used by other people without the Owner's permission.

    (c) The Renter won't tamper with the Items, try to repair them himself or ask anyone other than the Owner to repair them.

    (d) Renter will call Owner immediately if the Items are lost, stolen, damaged or need repair.

5. **Maintenance by Owner.** The Owner will keep the Items in good working order at no additional cost to Renter except when the Renter has damaged the Item by improper use or abuse or when the Item is damaged by causes beyond the control of the Owner such as floods or electrical storms. Owner may repair the Items or replace them either temporarily or permanently with another similar one which will be covered by the Agreement under the same terms. If the Items are not restored to good working order within 24 hours after the customer has notified the Owner of a non-working Item, the Owner will pay one week's rent on the Item for the Renter.

6. **Return of Items by Renter.** Renter may end this Agreement at any time by returning the Items to Owner in same condition they were in when Renter received them, except for normal and reasonable wear and tear, and by paying Owner all Rent due through the date of the return.

7. **Owner May End Agreement.** If Renter does not pay the Rent when due or does not abide by every other term of this Agreement, then the Owner can end the Agreement and require the Renter to return the Item immediately. If the Agreement is cancelled by Owner and Renter does not immediately return the Items, then Owner may enter the Renter's property and take them back, and Renter will have to pay Owner for the costs of repossession.

8. **Renter's Option to Purchase Items.** Renter may purchase the Items listed on Exhibit A by doing either of the following:

    (a) Making the total number of consecutive Rent Payments shown in Exhibit A.

    (b) Paying Owner an amount equal to the total amount paid for ownership for any Item, minus the total Rent Payments already paid to Owner for such Item, multiplied by 60%, provided all Rent Payments due are paid in full and the option is taken at least 90 days prior to the last rent payment due date.

9. **Damages and Insurance.** The Renter will pay Owner for its loss if the Items are damaged, lost, stolen or returned in bad condition. The Renter, at his own expense, may carry fire, casualty and theft insurance covering the Items (Renter should check with his insurance agent to make sure the Items are covered by his homeowner's or renter's insurance policy). Renter will immediately notify both his insurance company and Owner if the Items are lost, stolen or damaged.

10. **Signing This Agreement.** By signing this Agreement below, Renter promises and states the following:

    (a) When received, Renter will examine the Items carefully and will notify Owner immediately if the Items are not in good operating condition or if Renter is not satisfied with them for any reason.

    (b) Renter says he or she has carefully examined any products listed in Exhibit A as previously rented, and is satisfied with their condition.

    (c) Renter will pay the Rent on time and obey all the other terms of this Agreement.

    (d) Renter has read this Agreement and understands it.

    (e) Renter says that the Owner has not made any promises to him or agreements with him other than those which are contained in this written Rental Agreement and the Description of Rented Items (Exhibit A).

    (f) Renter has been given an exact copy of this Agreement.

    (g) Renter will allow Owner to add product identification numbers (Owner ID and serial) to the Agreement if they are not known at time of signing Agreement.

If anyone in addition to the named Renter signs this Agreement below under the title "Renter", he or she agrees to be responsible for everything the named Renter must do under this Agreement.

Renter

_Leslie Rose_

Owner

NRM, Inc. dba Shastar

By _M. Diez_

APPENDIX A – PAGE TWO

APPENDIX B

**RENT · RITE**
RENTAL INCORPORATED

**309 W. MAIN STREET
FAIRBORN, OHIO 45324
(513)879-4000**

FOR OFFICE USE ONLY

#13091=

139

DATE __11-1__ 9 _85_

RENTER __Dennis Grothn__

RESIDENCE ADDRESS __315 West South College__

APARTMENT __Wromsp__ PHONE __767-1148__

ITEM __Soft/Chair__ BRAND __Art Girt__

MODEL __4156__ SERIAL __1301__

ITEM _____ BRAND _____

MODEL _____ SERIAL _____

WEEKLY RENTAL RATE IF PAID ON OR BEFORE DUE DATE $ __12.50__

OPTIONAL DAILY RENTAL RATES
Daily Rate $ __2.00__

Monthly Rental Rate if Paid on or before due Date $ __50.00__

Collection Charges $ __5.00__

1ST DUE DATE __FRIDAY__ DAY OF WEEK __11-1-85__ DATE

MAINTENANCE LIMIT __52__ DATE

## THIS IS A RENTAL AGREEMENT ONLY

THE UNDERSIGNED HEREIN CALLED "RENTER," WHETHER ONE OR MORE, DOES JOINTLY AND SEVERALLY HEREBY RENT FROM THE RENTAL COMPANY, HEREIN CALLED "OWNER," THE ABOVE DESCRIBED PERSONAL PROPERTY, HEREIN CALLED "PROPERTY," AT THE RENTAL RATES SET FORTH ABOVE, PAYABLE WEEKLY IN ADVANCE FOR WEEK TO WEEK TERMS BEGINNING ON THE COMMENCEMENT DATE STATED ABOVE, EXCEPT AS STATED BELOW

**THIS IS A WEEK-TO-WEEK, DAY-TO-DAY, OR MONTH-TO-MONTH RENTAL AGREEMENT ONLY**

TITLE AND TERM. TITLE REMAINS AT ALL TIMES IN THE OWNER THE RENTER RECEIVES USE AND POSSESSION OF THE PROPERTY FOR SUCCESSIVE ONE-WEEK TERMS SO LONG AS WEEKLY RENTAL PAYMENTS ARE MADE ON OR BEFORE THE DATE DUE AND RENTER COMPLIES FULLY WITH ALL AGREEMENTS AND CONDITIONS HEREOF AND UNLESS THIS AGREEMENT IS TERMINATED AS PROVIDED HEREIN IN THE EVENT RENTER FAILS TO RENEW FOR A WEEK-TO-WEEK TERM BY PAYMENT OF THE WEEKLY RENTAL RATE IN ADVANCE ON OR BEFORE THE DATE DUE AND RETAINS POSSESSION OF THE PROPERTY, RENTER AGREES TO RENT SAID PROPERTY ON A DAY-TO-DAY TERM AT THE OPTIONAL DAILY RENTAL RATES SET OUT ABOVE, PAYABLE IN ADVANCE RENTER MAY ELECT TO THEREAFTER RENEW ON A WEEK-TO-WEEK BASIS ON ANY WEEKLY ANNIVERSARY OF THE FIRST DUE DATE ABOVE BY MAKING ALL REQUIRED PAYMENTS TO SAID ANNIVERSARY DATE AND THE PAYMENT FOR A ONE WEEK TERM THEREAFTER

TERMINATION BY RENTER. RENTER AT ITS OPTION, MAY AT ANY TIME TERMINATE THIS AGREEMENT BY RETURN OF THE PROPERTY TO OWNER IN ITS PRESENT CONDITION, FAIR WEAR AND TEAR EXCEPTED AND BY PAYMENT OF ALL RENTAL PAYMENTS DUE THROUGH THE DATE OF RETURN

TERMINATION BY OWNER. THIS AGREEMENT SHALL AT THE OPTION OF THE OWNER AND WITHOUT NOTICE TERMINATE UPON THE FAILURE OF RENTER TO MAKE EVERY RENTAL PAYMENT REQUIRED HEREIN ON OR BEFORE THE DATE DUE, OR BY BREACH BY THE RENTER OF ANY AGREEMENT, CONDITION OR REPRESENTATION, ALL OF WHICH ARE AGREED TO BE MATERIAL RENTER SHALL IMMEDIATELY RETURN THE PROPERTY TO OWNER IN ITS PRESENT CONDITION, FAIR WEAR AND TEAR EXCEPTED AND RENTER SHALL REMAIN LIABLE FOR ALL PAYMENTS HEREUNDER FOR THE DATE OF TERMINATION AND FOR THE PERFORMANCE OF ALL AGREEMENTS AND CONDITIONS HEREOF

LOCATION OF PROPERTY RENTER WARRANTS AND AGREES THAT IT WILL KEEP SAID PROPERTY IN ITS POSSESSION AT THE RESIDENCE ADDRESS ABOVE AND WILL NOT REMOVE SAID PERSONAL PROPERTY FROM SAID ADDRESS WITHOUT AGREEMENT IN WRITING EXECUTED BY THE OWNER IF RENTER MOVES SAID PROPERTY WITHOUT SECURING PRIOR AGREEMENT IN WRITING FROM OWNER THIS AGREEMENT SHALL BE THEREBY BREACHED, GIVING THE OWNER THE RIGHT OF IMMEDIATE POSSESSION AND RENTER SHALL BE LIABLE FOR PROSECUTION UNDER APPLICABLE STATE LAW

INSURANCE. OWNER CARRIES NO INSURANCE ON THE ABOVE RENTAL PROPERTY

DAMAGES· RENTER IS FULLY RESPONSIBLE FOR THE LOSS, THEFT OR DESTRUCTION OF SAID PROPERTY FROM ALL CAUSES WHATEVER AND AGREES TO PAY TO THE OWNER THE FAIR MARKET VALUE OF THE PROPERTY IN SUCH EVENT IN THE EVENT OF DAMAGE AND/OR PARTIAL DESTRUCTION FROM ANY CAUSE WHATEVER, RENTER AGREES TO PAY TO THE OWNER A REASONABLE COST OF REPAIR TO SAID PROPERTY

ASSIGNMENT· THIS AGREEMENT MAY BE SOLD, TRANSFERRED AND ASSIGNED BY OWNER WITHOUT RESTRICTION RENTER HAS NO RIGHT TO ASSIGN SUB-LEASE OR TRANSFER HIS RIGHTS HEREIN WITHOUT THE WRITTEN CONSENT OF OWNER

MAINTENANCE AND TAXES· THE OWNER DOES HEREBY AGREE TO MAINTAIN THE PERSONAL PROPERTY IN GOOD WORKING ORDER AND ANY AND ALL MAINTENANCE OR REPAIRS TO THE PROPERTY OF THE OWNER RENTED HEREUNDER MUST BE PERFORMED BY THE OWNER AND THE OWNER WILL NOT BE RESPONSIBLE FOR COSTS OF ANY REPAIRS DONE AT THE REQUEST OF THE RENTER BY OTHERS THE OWNER SHALL PAY ANY PERSONAL PROPERTY TAXES ON SAID PROPERTY MAINTAINANCE IS NOT PROVIDED BEYOND THE DATE SPECIFIED ABOVE AS "MAINTENANCE LIMIT"

OWNER'S RIGHT TO ENTER AND TAKE POSSESSION THE OWNER AND ITS AGENTS UPON THE TERMINATION OF THIS AGREEMENT, ARE SPECIFICALLY AUTHORIZED TO ENTER UPON ANY PREMISES WHERE THE PROPERTY MAY BE FOUND AND TO TAKE POSSESSION OF AND REMOVE THE PROPERTY WITHOUT LIABILITY, AND OWNER AND ITS AGENTS ARE HEREBY RELEASED AND DISCHARGED FROM ANY CLAIM OR CAUSE OF ACTION IN OR RELATING TO ENTRY AND TAKING POSSESSION AND RENTER AGREES TO INDEMNIFY OWNER AND ITS AGENTS FOR ALL COSTS, EXPENSES, AND DAMAGES OCCURRING DIRECTLY OR INDIRECTLY FROM OR RELATED TO THE TAKING POSSESSION AND THE REMOVAL OF SAID PROPERTY

RENTER HAS NO RIGHT TO SELL, MORTGAGE, PAWN, PLEDGE, ENCUMBER, OR DISPOSE OF SAID PROPERTY OR TO MOVE SAID PROPERTY FROM THE RESIDENCE ADDRESS LISTED ABOVE. TO DO SO IS A BREACH OF THIS AGREEMENT AND RENTER SHALL BE LIABLE UNDER APPLICABLE STATE LAW

IN THE EVENT RENTER AT HIS SOLE ELECTION RENEWS THIS RENTAL AGREEMENT FOR __52__ SUCCESSIVE ONE-WEEK TERMS, OWNER WILL TRANSFER THE PROPERTY TO RENTER

**TIME IS OF THE ESSENCE OF THIS AGREEMENT**

NO ORAL STATEMENTS OR AGREEMENTS SHALL BE VALID OR BINDING ON THE PARTIES HERETO THIS RENTAL AGREEMENT MAY BE MODIFIED, VARIED, ALTERED OR EXTENDED, OR THE AGREEMENTS OR CONDITIONS HEREOF WAIVED ONLY BY AGREEMENT IN WRITING EXECUTED BY THE OWNER RENTER ACKNOWLEDGES RECEIPT OF SAID PROPERTY IN SATISFACTORY OPERATING CONDITION THE PROPERTY IS NOT REPRESENTED TO BE NEW PROPERTY

## I HAVE READ AND UNDERSTAND THE ABOVE RENTAL AGREEMENT

Renter X _____

Renter _____

Witness _____

APPENDIX B — PAGE ONE

110

RENT-RITE
RENTAL INCORPORATED
TV · STEREOS · APPLIANCES

309 W. MAIN STREET
FAIRBORN, OHIO 45324
(513)879-4000

**CUSTOMER'S NAME** Donnis Greehan  **DATE** 11-1-85

**ADDRESS** 315 West South College  **PHONE** 767-1148

X Yellow Springs, Ohio

| ITEM | | | | | | TOTAL | |
|------|--|--|--|--|--|-------|--|
| Sofa - Chair | | | | | | | |

**MODEL** 4156

**SERIAL NUMBER** 4321   #7309F

**ITEM NUMBER** 139

**MODEL**

**SERIAL NUMBER** 50⁰⁰ mouth /12 months

**ITEM NUMBER** IST · WEEK(12.50) RECPT 1952?

**MODEL**

**SERIAL NUMBER** Next due  11-9-85

**ITEM NUMBER**

RECEIVED BY:

X

ALL CLAIMS AND RETURNED GOODS MUST BE
ACCOMPANIED BY THIS BILL.

Thank You

SUB TOTAL

TAX

TOTAL

DOWN PAYMENT

BALANCE

APPENDIX B – PAGE TWO