94 B.R. 103 (1988)
In the Matter of Leslie and Phyllis ROSE, Debtors.
George W. LEDFORD Chapter 13 Trustee, Plaintiff,
v.
NRM, INC., Defendant.[*]
Bankruptcy Nos. 3-87-01507, 3-87-00534, 3-87-00554, 3-87-00401 and 3-87-00678, Adv. Nos. 3-87-0173, 3-87-0175, 3-87-0203, 3-87-0174 and 3-87-0169.
United States Bankruptcy Court, S.D. Ohio, W.D.
September 22, 1988.
Jeffrey P. Albert, Dayton, Ohio, for debtors.
Bruce A. Buren, Dayton, Ohio, for defendant.
George W. Ledford, Englewood, Ohio, Trustee.
THOMAS F. WALDRON, Bankruptcy Judge.
This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B, C, K, M, O). The plaintiff, the Chapter 13 Trustee, seeks a determination that the agreements in these five (5) cases, all of which involve similar, but not the same, legal and factual issues, are secured sales agreements disguised as leases. This issue is before the court on the plaintiff's Motions For Summary Judgment (Doc. 13 in this Adversary No. 3-87-0173, Doc. 14 in Adversary No. 3-87-0174, Doc. 13 in Adversary No. 3-87-0175, Doc. 12 in Adversary X-XX-XXXX, Doc. 9 in Adversary X-XX-XXXX) and the defendant's Memoranda In Response To Motion *104 For Summary Judgment (Doc. 21 in this Adversary X-XX-XXXX, Doc. 22 in Adversary X-XX-XXXX, Doc. 21 in Adversary X-XX-XXXX, Doc. 21 in Adversary X-XX-XXXX, Doc. 17 in Adversary X-XX-XXXX).
The debtors in each case entered into what the defendants characterize as a rental agreement. See Appendix A, for a copy of the agreements in this Adversary X-XX-XXXX, and Adversaries X-XX-XXXX, X-XX-XXXX, X-XX-XXXX, and Appendix B for a copy of the agreement in Adversary No. 3-87-0175.
All of these agreements share similar provisions in that the customer agrees to a weekly payment for the use of the property with an option to renew the agreement for pre-determined period of time (App. A at par. 1 and 8(a); App. B at par. 1.); and, if the customer continues the payments pursuant to the agreement for the pre-determined period, the ownership of the property is transferred to the customer upon completion of the payments for no additional consideration from the customer and the agreement terminates.
Additionally, in the Shastar agreements (App. A), the customer is given the option to purchase the property prior to completion of the pre-determined period by paying 60% of the remaining balance. App. A at 8(b). The Rent-Rite agreement (App. B) does not contain such a provision.
In these five (5) cases, prior to completion of the payments required for ownership, the debtors filed Chapter 13 petitions and listed the defendant companies as unsecured creditors. The defendants all filed proofs of claim as lessors. See Doc. 1, Exhibits A, B, C.. In this adversary the Chapter 13 Trustee filed a Complaint And Counterclaim To Proof Of Claim (Doc. 1) which asks the court to "[f]ind that the claim of defendant is an installment sales contract; disallow the claim of defendant as filed; and authorize the defendant to file an amended unsecured proof of claim." The Chapter 13 Trustee, subsequently stated that for purposes of these motions for summary judgment only, if the court found these agreements were not true leases, the trustee would not dispute that the defendants have a purchase money security interest in the property.
In this adversary the defendant filed an Answer (Doc. 3). The trustee and the defendants filed similar Complaints and Answers in each of the other adversaries (X-XX-XXXX, X-XX-XXXX, 3-87-169 and X-XX-XXXX). In addition to reviewing the trustee's Complaints, the defendants' Answers, the trustee's Motions For Summary Judgment and the defendants' Memoranda In Response To The Motions For Summary Judgment, the court also considered the oral arguments of counsel for the defendants and the Chapter 13 Trustee.
The trustee argues that these agreements were actually intended by the parties to act as secured installment sales contracts. Doc. 13 at 2. He supports this conclusion by noting that none of the agreements require additional consideration before ownership is transferred at the end of the pre-determined period. Doc. 13 at 2, 3.
The defendant argues that the agreements only require a one week rental period and at the end of any weekly rental period the customer may return the property without ownership and without any further obligation. Accordingly, he concludes these agreements are true leases (Doc. 21 at 7, 8).
The issue presented in these five (5) adversaries is familiar in bankruptcy proceedings. See Sight and Sound of Ohio v. Wright, 36 B.R. 885 (D.S.D.Ohio 1983); Consumer Lease Network v. Puckett, In re Puckett, 60 B.R. 223, cases collected at footnotes 25 and 26 (Bankr.M.D.Tenn. 1986); aff'g per curiam sub nom Consumer Lease Network, Inc. v. Nancy Sue Puckett et al., 838 F.2d 470 (6th Cir.1988); American Way Rentals v. Fogelsong, (In re Fogelsong), 88 B.R. 194 (Bankr.C.D.Ill. 1988).
Although this court shares the view that the determination of this issue involves analyzing all relevant factors surrounding the agreement and the relationships created therein, the resolution of this issue is controlled by state law. Sight and *105 Sound, supra at 885; See also, In re Puckett, supra, at 234. The relevant Ohio Revised Code provision which governed these agreements at the time they were executed provided:
Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security. Ohio Rev.C. § 1301(KK) (Anderson Supp.1987) (See also U.C.C. 1-201(37))
This provision of the Ohio Revised Code (§ 1301.01(KK)) was considered in Sight and Sound, supra, by District Judge Walter H. Rice, in an appeal from a decision issued by former Bankruptcy Judge Charles A. Anderson of this court. In his decision, Judge Rice noted,
This broad based inquiry [analyzing all relevant factors surrounding the agreement and the relationships created therein], however, must be cut short whenever it is determined that the purported lease provides that upon compliance with the terms of the lease, the leasee shall become, or has the option to become, the owner of the property for no additional consideration or for nominal consideration. ORC § 1301(KK) (U.C.C. § 1-201(37)). In such instances, the applicable statutory provision, compels the legal conclusion that the lease was one intended for security. (citation omitted) Sight and Sound at 890 (emphasis added).
It must be recalled that this issue is before the court in all five adversary proceedings on a motion for summary judgment filed by the Chapter 13 Trustee. As this court noted in Matter of Warner, 65 B.R. 512, 516 (Bankr.S.D.Ohio 1986),
The cases interpreting the various provisions of Rule 56 have produced an evolving body of law that has continued to emphasize standards which require both a moving and a nonmoving party to give careful attention to the presentation and defense of a motion for summary judgment. The two recent decisions from the United States Supreme Court reflect the careful attention required by all parties involved in a motion for summary judgment.
In Anderson, the Court held that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden," Id., 477 U.S. at 254, 106 S.Ct. at 2513, i.e., "whether a jury [fact finder] could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." Id. (emphasis in original).
In Celotex [Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)], the Court established the standard under which a trial court should rule on a motion for summary judgment:
Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of *106 proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Id., 477 U.S. at 322-23, 106 S.Ct. at 2552-53.
This statement from the Court resolved the question of whether the party who does not bear the ultimate burden of proof at the trial of an issue must, as the movant in a motion for summary judgment, through the presentation of specific evidence negate the nonmovant's case in order to establish that there is no "genuine issue of material fact," thereby entitling the movant to summary judgment. A moving party in motion for summary judgment meets its burden by affirmatively demonstrating from the record that is before the court that there is no evidence to support an essential element of the nonmoving party's case.
In this adversary proceeding, the Shastar lease, (App. A), permits the lessee to exercise an absolute option to purchase the property at any time prior to the final 90 days of the lease, (App. A, pg. 2, par. 8(b)) and permits a transfer of ownership at the end of the lease term without additional consideration. Additionally, the operation of the purchase option price formula appears to provide the lessee with equity in the property by allowing the payments made by the debtor to be credited toward the purchase of the property. Id. Although the agreement contains language and elements consistent with a true lease, when the total language and elements of the contract are considered, including the specific language in the agreement providing for an "amount paid to own item," (App. A pg. 1 at numeral 1) and the absolute option to purchase, it follows that the parties intended the debtor to obtain ownership of the property and the agreement is one intended for security. With regard to these leases (App. A-this adversary X-XX-XXXX, and adversaries X-XX-XXXX, X-XX-XXXX and X-XX-XXXX), upon the facts presented, the conclusion that they are not true leases, but rather disguised installment purchases, is completely consistent with, if not compelled by, the relevant provision of the Uniform Commercial Code as adopted in Ohio Revised Code Section 1301.01(KK).
The Rent-Rite lease (App. B), does not provide for a purchase option during the pendency of the lease; however, it does provide for a pre-determined amount to be paid for a pre-determined period which, when completed, will result in ownership of the property for no additional consideration. The agreement also places all risk of loss or damage on the lessee, and, as noted, the transfer of ownership at the end of the agreement does not require the payment of any additional consideration. Again, upon review the facts presented, the Rent-Rite, Inc. agreement (App. B, Adversary X-XX-XXXX) is also determined not to be a true lease as contemplated by the provisions of Ohio Revised Code § 1301.01(KK).
In these five adversaries, when the evidence that has been presented in connection with the various motions for summary judgment, (App. A, App. B, Doc. 1, Exhibits A, B, C), is "viewed through the substantive evidentiary burden", it is clear that there has been a complete failure of proof on an essential element of the nonmoving parties' case, specifically, any evidence that would remove these agreements from the provisions of Ohio Revised Code § 1301.01(KK) as interpreted in this district in Sight and Sound, supra. Accordingly, the Chapter 13 Trustee, the moving party, has met the burden of affirmatively demonstrating from the record before the court that there is no evidence to support an essential element of the nonmoving party's (the defendant's) case.
The court recognizes that this decision may be without prospective effect. The Ohio General Assembly has recently enacted legislation which defines lease purchase agreements [Ohio Revised Code § 1351.01(F) effective June 29, 1988] and amends Ohio Revised Code § 1301.01(KK) to provide in part,
A LEASE-PURCHASE AGREEMENT AS DEFINED IN DIVISION (F) OF SECTION 1351.01 OF THE REVISED *107 CODE SHALL NEVER BE INTENDED AS SECURITY.
For the above reasons, the Motion Of The Trustee For Summary Judgment is HEREBY GRANTED. A copy of this decision and an order in accordance with this decision is contemporaneously entered in each of the five related adversaries.
SO ORDERED.

APPENDIX A *108 

*109 APPENDIX B *110 
NOTES
[*] And (Related Adversaries): Dennis Geehan (Defendant Rent-Rite, Inc.); William & Janet Scott (Defendant Arcorp, Inc.); Pamela Richards (Defendant Long Rent To Own, Inc.); Belvis & Patricia Ringer (Defendant Arcorp, Inc.).